LILLIAN E. JUDKINS *vs.* THOMAS J. CHARETTE & others.

Suffolk.    December 3, 1925. — February 26, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Landlord and Tenant,* Renewal of lease, Forfeiture, Waste, Repairs.

In a suit in equity, it appeared that the plaintiff was the lessee of certain real estate under a lease, expiring January 5, 1925, and reciting that the lessor agreed to renew it at the expiration of the term for a further period of five years if the lessee so desired and should notify the lessor in writing to that effect on or before October 1, 1924, and that the lessee should at the end of the term deliver up the premises to the lessor in as good order and condition, reasonable use and wear thereof excepted, as they were in at the date of the lease or might be put in by the lessor, and that the lessee should not make or suffer any waste thereof. In September, 1924, the plaintiff gave a notice to the then owner of the reversion of his intention to renew the lease for five additional years. In November, 1924, the lessor conveyed the property to the defendant subject to the lease. In March, 1925, the defendant entered upon the premises for breach of covenants of the lease. The plaintiff sought possession and a renewal lease from the defendant. The defendant contended that he was entitled to take possession for breach of the conditions of the lease relating to waste, the payment of rent, and the making of repairs. A judge who heard the suit, on evidence warranting his findings, found that the failure to pay rent was through a mistake

and inadvertance of the plaintiff, that there had been no waste and that the covenant relating to repairs had not been violated; and by his order a decree was entered that at the time of the entry the lease was in full force and effect, and relief was given to the plaintiff.   On an appeal by the defendant, it was *held*, that

(1) Although the lease by its terms required the giving of a new lease or something equivalent thereto to bind the parties for the additional term, the plaintiff was not without remedy in equity, and, having given seasonable notice of his intention to renew, might have specific performance of the agreement to renew;

(2) The covenant in the lease did not impose upon the tenant the duty of keeping the premises in repair at all times during the term and did not expressly entitle the lessor to reënter for failure to repair, and such right could not be found to exist by implication;

(3) The lessor's right to reënter, being restricted to a breach of specific covenants of the lease, impliedly excluded his right to reënter for a breach of other covenants;

(4) The final decree was modified by striking out the recital that at the time of the entry by the defendant the lease was in full force and effect, and inserting in place thereof a provision that the defendant be ordered to execute and deliver to the plaintiff a new lease of the premises for the renewed term.

BILL IN EQUITY, filed in the Superior Court on March 23, 1925, to require the defendants to restore to the plaintiff possession of certain real estate in Oak Bluffs in Martha's Vineyard, which the defendants had entered upon under a claim of right by reason of alleged breach by the plaintiff of covenants in a lease from the defendants' predecessor in title; to require the defendants to execute and deliver to the plaintiff a new lease of the premises, and for general relief.

The suit was heard in the Superior Court by *Weed,* J., a stenographer having been appointed under Equity Rule 35 (1905), G. L. c. 221, § 85, to take the evidence.

A paragraph in a statement of facts found by the judge, just preceding that quoted in the opinion, was as follows: "During the term of her lease it had been the practice of the plaintiff to renovate the theatre just prior to its opening in June and to put the building in repair at the same time, save such repairs as became necessary at other times of the year and were too urgent to be postponed.   Her manager, who lived on the island, visited the building from time to time during the winter.   The defendants admitted that the building was in good repair last summer when they visited the

theatre, and I find that the premises were then in as good order and condition, reasonable use and wearing thereof excepted, as when the lease was executed in 1920. The blowing down of the sign [in August of that year] caused some leaks in the roof and while some repairs were at once made, the defendants contended and I find that the roof was not properly repaired to go through the winter. The defendant Charette examined the building in October or November, 1924, and later, before the sending of said check, had some talks with the husband of the plaintiff in which he insisted that the building must be put in repair but did not specify what parts were not in repair."

Other material evidence and facts found by the judge are described in the opinion. By order of the judge a final decree, described in the opinion, was entered. The defendants appealed.

*S. Rosenberg,* (*T. J. Charette, Jr.,* with him,) for the defendants.

*C. C. Barton,* for the plaintiff.

CROSBY, J. By indenture dated January 5, 1920, one Norton leased to the plaintiff a certain building known as the Eagle Theatre, in Oak Bluffs on the island of Martha's Vineyard, for the term of five years from the date of the lease. The lease recited that the lessor agreed to renew it at the expiration of the term for a further period of five years, if the lessee so desired and should notify the lessor in writing to that effect on or before October 1, 1924. The new lease was to include all the terms and conditions of the original lease except the right to a further renewal. On September 15, 1924, the plaintiff duly notified one Darling, who then was the owner of the reversion, of her intention to continue the lease for five additional years.

By deed dated November 29, 1924, recorded January 5, 1925, Darling conveyed the premises to the defendants subject to the rights of the plaintiff as lessee. No new lease was executed to the plaintiff by the defendants or by their predecessor in title, nor was such lease demanded by her before the bringing of this suit. All rent due under the original lease was paid. An additional instalment of $500,

on account of the additional term, became due February 10, 1925. The plaintiff's husband testified that on January 30, 1925, he sent by mail to the defendant Charette the plaintiff's check for the amount due, together with a letter reciting that the check was in payment of rent due on February 10, 1925. Charette testified that he did not receive the check or the letter; the plaintiff testified that the check was not returned. The judge of the Superior Court before whom the case was tried found that the rent in question had not been paid when suit was brought.

On March 19, 1925, the defendants, without notice to or demand on the plaintiff or knowledge on her part that the check had not been received, entered the theatre building for the purpose of terminating the lease for breach of the conditions thereof, and on the next day notified her to that effect by letter. On March 23, 1925, the bill in this case was filed, and on the following day the plaintiff tendered to the defendants $550 in payment of the rent due and for the expenses of the entry. The defendants refused to accept the amount so tendered. This suit is brought to compel the defendants to execute and deliver to the plaintiff a new lease for the term of five years from January 5, 1925, and to restore possession and control of the premises to her, The evidence before the trial judge, in accordance with the order appointing the commissioner to take it, is reported.

The lease recited that the lessee should at the end of the term deliver up the premises to the lessor in as good order and condition, reasonable use and wear thereof excepted, as they were in at the date of the lease, or might be put into by the lessor, and that the lessee should not make or suffer any waste thereof. The defendants contend that they were entitled to take possession of the premises for breach of the conditions of the lease relating to waste, the payment of rent, and the making of repairs. The judge found that during the summer of 1924, the building was in as good order and condition, reasonable use and wear thereof excepted, as when the lease was executed on January 5, 1920; that the blowing down of a large sign attached to the roof had caused leaks in it, and although some repairs had been at once made

the roof was not in proper condition "to go through the winter." His further finding is as follows: "Upon all of the evidence I find that on January 5, 1925, and up to the time when the defendants made their entry on March 19, 1925, the roof of the building leaked in several places, mostly at the gable ends and where the sign had been fastened to the roof, that the water had run in on the metal ceiling and caused some rusting away along certain joints, and left streaks of rust thereon and had discolored the walls in places, that there were two or three bad cracks running down through the rear wall, although whether caused by settlement or by water and frost did not appear, that the water had caused certain plates supporting the roof trusses to rot, that in and about the window and door openings water came in due to action of the temperature and elements, and that there were some other minor repairs required, incidental to the conditions described."

In accordance with the terms of an interlocutory decree entered March 26, 1925, and shortly after the bill was filed, the defendants proceeded to make such repairs on the building as they deemed necessary to stop the leaks, at an expense of $252.68, which sum was found by the court to be the reasonable cost of such work as was needed therefor. It appears that the construction of the walls and roof of the building required repairs from time to time, and especially after the winter season and after heavy storms to keep the building water tight. It was not heated and was used only during the summer months. From the subsidiary facts found by the judge, his ultimate conclusions were that on and after January 5, 1925, and at the time of entry by the defendants, the lease was in full force and effect for a further term of five years upon the same terms and conditions except the right for further renewal; that the plaintiff had not made or suffered any strip or waste of the demised premises; and that the plaintiff's failure to pay the instalment of rent was unintentional and due to accident.

It is plain that the language of the lease which gave the lessee a right of renewal for five additional years contemplated the giving of a new lease or something equivalent

thereto in order to bind the parties for the additional period. *Leavitt* v. *Maykel*, 203 Mass. 506, 509. *Hanna* v. *County of Hampden*, 250 Mass. 107. *Wit* v. *Commercial Hotel Co.* 253 Mass. 564.

Although the lease by its terms required the giving of a new lease or something equivalent thereto to bind the parties for the additional term, it does not follow that the plaintiff is without remedy; as she seasonably gave notice of her desire to renew, the contract for renewal will be specifically enforced in equity. *Ryder* v. *Robinson*, 109 Mass. 67. *Toupin* v. *Peabody*, 162 Mass. 473. *O'Brien* v. *Boland*, 166 Mass. 481. *Leominster Gas Light Co.* v. *Hillery*, 197 Mass. 267. *Albiani* v. *Evening Traveler Co.* 220 Mass. 20, 25. The defendants as reversioners took title subject to the rights of the plaintiff under the lease. Their rights are subordinate to the plaintiff's rights under the lease and they are bound by the covenants therein contained to renew it. *Carpenter* v. *Pocasset Manuf. Co.* 180 Mass. 130. The covenant for renewal was a covenant running with the land. *Leominster Gas Light Co.* v. *Hillery, supra.*

It was said in *Delano* v. *Smith*, 206 Mass. 365, 370, that waste "is the violation of an obligation to treat the premises in such manner that no harm be done to them and that the estate may revert to those having an underlying interest undeteriorated by any wilful negligent act." *Pynchon* v. *Stearns*, 11 Met. 304. *Massachusetts Home Missionary Society* v. *Sirianni*, 252 Mass. 352. *United States* v. *Bostwick*, 94 U. S. 53, 65. *Gwinn* v. *Rogers*, 92 W. Va. 533. Whether the lessee committed or permitted waste was a question of fact. The finding of the judge that the plaintiff had not made or suffered any waste of the demised premises cannot be said, upon the evidence, to have been unwarranted.

It is settled that although time is of the essence in the exercise of an option to renew (*Donovan Motor Car Co.* v. *Niles*, 246 Mass. 106, and cases cited), it is not of the essence in equity unless made so expressly relating to the carrying out of the terms of the contract, or unless there has been such a change of condition after the time fixed for performance that the enforcement of the contract would be inequitable.

*Barnard* v. *Lee*, 97 Mass. 92. *Boston & Worcester Street Railway* v. *Rose*, 194 Mass. 142. Williston, Contracts, § 852.

The general finding, that at the time of entry by the defendants the lease was in full force and effect for a further term of five years, imports a finding that the covenant relating to repairs upon the building had not been violated. This is not inconsistent with the subsidiary findings. The covenant is to be construed in connection with the provision relating to reasonable wear and unavoidable casualties. *Ball* v. *Wyeth*, 8 Allen, 275. The character of the building, its original construction, the material covering the roof, and all the circumstances are to be taken into account in determining whether this covenant has been performed by the lessee. The fact that, later in the year and not long before the term of the original lease expired, a large sign was blown down causing leaks in the roof, is also to be considered upon the question whether the plaintiff failed to comply with the covenant to repair. The covenant did not impose upon the tenant the duty of keeping the premises in repair at all times during the term. It was complied with if they are left in that condition at the end thereof. *Hill* v. *Hayes*, 199 Mass. 411. *Cawley* v. *Jean*, 218 Mass. 263. We are unable to say that the finding was erroneous upon this question. Apart from what already has been said in this connection, the only provision in the lease which gave the lessor the right to reënter for a breach of the covenants by the lessee was as follows: " . . . if she shall fail to pay the rent as aforesaid, or make or suffer any strip or waste thereof." It is plain that the contract did not expressly entitle the lessor to reënter for failure to repair and such right cannot be found to exist by implication. The lessor's right to reënter being restricted to a breach of specific covenants of the lease, impliedly excludes the right of the lessor to reënter for a breach of other covenants. *Wheeler* v. *Earle*, 5 Cush. 31. *Bartlett* v. *Greenleaf*, 11 Gray, 98. *Powell* v. *Merrill*, 92 Vt. 124. *Burnes* v. *McCubbin*, 3 Kans. 221; 87 Am. Dec. 468. 16 R. C. L. § 634.

The defendants' contention, that failure of the plaintiff

to pay the instalment due on February 10 is a bar to specific performance, cannot be sustained. It appears that the plaintiff in good faith on January 30, 1925, sent to one of the defendants by mail a check for $500, the amount of the rent due on February 10. The finding, that upon all the evidence failure of the plaintiff to pay the instalment before it was due was not intentional but due to accident, was well warranted. Even if failure to pay the rent was not attributable to accident or mistake but was wilful, it would not have been ground for forfeiture. Courts do not look with favor upon penalties and forfeitures. *Atkins* v. *Chilson,* 11 Met. 112. *Chapman* v. *Harney,* 100 Mass. 353. *Mactier* v. *Osborn,* 146 Mass. 399. *Lundin* v. *Schoeffel,* 167 Mass. 465. *Finkovitch* v. *Cline,* 236 Mass. 196. As the plaintiff seasonably notified the defendants of her desire to renew the lease, it was the duty of the defendants to execute and deliver to her a new lease for a term of five years upon the same terms as the original lease except the provision for renewal.

In England it is the duty of the vendor of real estate to furnish the purchaser with an abstract of title, and it is the purchaser's duty to prepare a proper deed and to tender it to the vendor for execution. *In re Johnson,* 30 Ch. D. 42. *In re Stamford,* [1900] 1 Ch. 287. In this country the general rule is, that, to put the purchaser in default, the vendor is required to prepare and execute a sufficient deed and to tender it. In *Tinney* v. *Ashley,* 15 Pick. 546, it was said at page 552: "The defendants contracted to execute and deliver a good and sufficient deed, and it is incumbent on them to do whatever was necessary to the performance of their contract. If the law in England is otherwise, it must by founded on custom and practice and not on any legal principle independently of practice." *Boston & Worcester Street Railway* v. *Rose, supra. Smith* v. *Greene,* 197 Mass. 16, 18. *Sleeper* v. *Nicholson,* 201 Mass. 110. *Hill* v. *Hobart,* 16 Maine, 164, 167. *Boyd* v. *McCullough,* 137 Penn. St. 7, 16. *Consolidated Coal Co.* v. *Findley,* 128 Iowa, 696. *Leaird* v. *Smith,* 44 N. Y. 618, 623, 625. *Taylor* v. *Longworth,* 14 Pet. 172, 175. *Willard* v. *Tayloe,* 8 Wall. 557, 572, 573. Williston, Contracts, § 924.

The final decree is to be modified by striking out that part which recites that the lease dated January 5, 1920, is in full force and effect, and inserting in place thereof a provision that the defendants be ordered to execute and deliver to the plaintiff a new lease of the premises for the term of five years from January 5, 1925, upon the same terms and conditions as are contained in the original lease except the right to a further renewal. As so modified, the decree is to be affirmed with costs of this appeal.

*Ordered accordingly.*