Mutty and Tirrell, Incorporated, *vs.* Herbert B.
Vialle & another.

Herbert B. Vialle & another *vs.* Mutty and Tirrell,
Incorporated.

Middlesex.    March 10, 11, 1926. — May 29, 1926.

Present: Braley, Crosby, Pierce, & Wait, JJ.

*Landlord and Tenant*, Renewal of lease. *Contract*, What constitutes,
Performance and breach. *Corporation*, Officers and agents. *Equity
Jurisdiction*, Specific performance.

A suit in equity, to compel a corporation to execute and deliver a lease
of real estate alleged by the plaintiff to have been agreed upon by the
parties, cannot be maintained where it appears that such agreement
was made by the plaintiff with an officer purporting to act for the
defendant corporation, but there is no evidence and it does not appear
that the acts of the defendant's officer were authorized by any vote of
the defendant's directors or stockholders, or that such acts were rati-
fied by the corporation.

A suit in equity by a corporation, the lessee of certain real estate, to compel
the lessor to execute and deliver a deed of conveyance of the property
to the lessee in accordance with provisions of the lease, in substance
that "the lessors agree with the lessee that upon request made by the
lessee at any time before the legal termination of this lease, they will
sell and convey the said premises by quitclaim deed . . . to the lessee"
upon receipt of a stipulated purchase price, cannot be maintained where
it appears that the same paragraph of the lease which contained such
provisions contained a provision that "the lessors agree with the lessee
that they will at any time on or before the expiration of this present
lease, at the request and expense of the lessee, execute to and with the
lessee a new lease of the premises hereby demised for the further term
of five (5) years to commence from the expiration of the term hereby
created," and, previous to demanding the sale and conveyance, the
lessee had notified the lessor that it desired the new lease for the ex-
tended term; since the agreements, one for the new lease and the other
for the sale, were distinct and the lessee could not take repugnant
positions by requesting a lease while it also claimed a right to purchase,
and its election to take a lease was decisive.

Bill in equity, filed in the Superior Court on September 8,
1925, with a writ in trustee process dated September 5,
1925, to compel the defendants to execute and deliver to the
plaintiff a deed of real estate on Main Street and Walden

Street in Concord, in accordance with an agreement in a lease under which the plaintiff was in possession of the premises.   Also a

BILL IN EQUITY, filed in the Superior Court on September 18, 1925, with a writ of summons and attachment dated September 16, 1925, and afterwards amended, by the defendants in the first suit to compel the plaintiff in the first suit to execute and deliver as lessees a new lease alleged to have been agreed upon by the parties.

The two suits were referred to and were heard together by the same master.   Material facts found by the master are stated in the opinion.   The suits were heard together by *McLaughlin*, J., upon the master's report and there were entered interlocutory decrees confirming the master's report after certain modifications were made by the judge, and final decrees dismissing the first suit and granting to the plaintiffs in the second suit the relief they sought.   Mutty and Tirrell, Incorporated, appealed from the decrees in both suits.

*D. H. Fulton*, (*M. McWalter* with him,) for Mutty and Tirrell, Inc.

*R. R. Duncan*, (*R. E. Goodwin* with him,) for Vialle and another.

BRALEY, J.   The corporation, defendant in the second suit, under its original name of Torrey & Vialle, Inc. took from the plaintiffs on October 1, 1920, a lease of the premises described in the bills of complaint.   The lease, which was for a term of five years beginning October 1, 1920, and ending September 30, 1925, contained the following clauses.

"The Lessors agree with the Lessee that they will at any time on or before the expiration of this present lease, at the request and expense of the Lessee, execute to and with the Lessee a new lease of the premises hereby demised for the further term of five (5) years to commence from the expiration of the term hereby created at a rental ten per cent (10%) greater than the rent herein reserved, payable in like manner, such lease to contain like covenants, agreements and provisos (excepting an agreement for further renewal and an agreement to sell the premises to the Lessee) as are herein contained.   The Lessors agree with the Lessee that upon

request made by the Lessee at any time before the legal termination of this lease, they will sell and convey the said premises by quitclaim deed, free and clear of all encumbrances made or suffered by them, (excepting taxes for the then current year) to the Lessee upon receipt from the Lessee as the consideration for such conveyance the sum of thirty-five thousand ($35,000) dollars in cash, insurance premiums, taxes, and municipal charges assessed upon the property as of the year in which such sale shall take place to be apportioned between the parties as of the date of such sale in the usual manner."

The corporation on January 20, 1925, wrote Herbert Vialle, one of the lessors, who are husband and wife, stating: "We have taken this occasion to notify you of our willingness to take up the option for an additional period of years granted us in our present lease. As I recall it is necessary that we do this before the expiration of our present one. Kindly acknowledge the receipt of this letter." The letter was given by Vialle to his counsel, Robert E. Goodwin, Esquire, and nothing further occurred until early in May, 1925, when Mutty, president of the corporation, asked Vialle, "What, if anything, was being done with regard to the drawing up of a new lease." He replied that "he had turned the whole matter over to Mr. Goodwin and for Mr. Mutty to see him."

The notice was a sufficient request for a new lease in accordance with the terms of the covenant. *Kramer* v. *Cook*, 7 Gray, 550. It was encumbent on the lessors at the expense of the corporation to prepare, execute and tender a new lease, and if this was not done within a reasonable time, the corporation could obtain relief by a bill in equity for specific performance. *Traveler Shoe Co.* v. *Koch*, 216 Mass. 412. *Judkins* v. *Charette*, 255 Mass. 76. But, upon conference between Mutty and Mr. Goodwin, Mutty stated that he desired certain changes in the new lease, which the record shows were not within the terms of the lease called for by the covenant. At a second conference Mr. Goodwin informed Mutty that Vialle was ready to assent to certain changes which were stated by Mr. Goodwin. Mutty expressed him-

self as satisfied with the proposed terms, but stated that he would like to discuss the matter with Tirrell, the treasurer, and he later told Mr. Goodwin that he had talked with Tirrell, "and that it was all right for Mr. Goodwin to go ahead and draw the papers." A further change was also suggested by Mr. Goodwin to which Mutty assented. The new lease was prepared by Mr. Goodwin which followed the terms of the old lease except the changes, and he wrote Mutty:

"Enclosed please find the following papers: —

(1) Two originals of new lease containing the new clauses agreed upon;

(2) Formal abandonment of option to purchase; and

(3) Form of vote which your Directors should pass, confirming these transactions.

"I want to have the abandonment of the option to purchase in formal shape so that it could be recorded in case of necessity.

"In view of the fact that this lease may run for ten years I want a formal vote of the Board of Directors and it will be necessary to have the vote certified and sworn to by your corporation Clerk in case it should be necessary to record the papers.

"Therefore, it will be necessary for you to execute three copies of the vote so that one may be attached to each duplicate original of the Indenture of Lease and one may be attached to the waiver of the purchase option.

"I enclose the following additional extra copies for your files: —

(1) Copy of lease;

(2) Copy of waiver of option; and

(3) Copy of vote.

"I would suggest the following procedure: —

"Let your corporation execute the necessary votes and papers and we will then arrange to have Mr. and Mrs. Vialle sign them before formal delivery. It is, of course, to be understood that your waiver of option becomes effective only when Mr. and Mrs. Vialle have executed and delivered to you a lease, as per enclosed form.

"You will note that the new form of lease is identical with the existing lease with the following exceptions: —

(1) The assignment and subletting clause is changed to the usual form appearing in Massachusetts leases;

(2) You have authority to remove the partition between the office and stockroom and the only obligation on you with respect to removal is to properly repair any damage to plastering, woodwork etc. caused by the removal;

(3) The lease has a further renewal option, as per agreement, but no option to purchase, and

(4) The clause as to repairing fire damage to the dwelling as agreed over the telephone.

"The existing lease provides that the expense of preparing the renewal lease is for account of Lessee, — that is your company. My charge for the preparation of the new lease, including several conferences we have had respecting the changes therein, will be $50. This will be payable upon delivery of the instruments herein enclosed."

The papers thus forwarded were submitted by Mutty to his counsel, who wrote Mr. Goodwin:

"I have today talked over the matter with clients regarding the matter of the leasing of the garage property alone and not including the property on Main Street. It seems that if Mr. Vialle would be willing to do this, the other property can be sold at the present time as there is a party after it who is willing to purchase.

"As I before stated, owing to business conditions here in the automobile business, there is one garage vacant, Whites, and the other of the Middlesex Motor Company can also be leased. This last one which is the old Tuttle Stable property is an up to date plant and will accommodate double the amount of cars the one belonging to Mr. Vialle will hold as well as having a very fine show room. The price asked is only $200. per month for the same.

"I have gone over the question of the amount of rent that my clients could pay for the garage property alone and it seems that if Mr. Vialle would feel disposed to lease that according to the same terms and conditions as are embodied in the present lease, a rental of $275. per month would be a fair price for the same.

"As I before stated, this is a proposition made by me to my clients to take over the garage alone if possible as it seems to me from the outlook now, that unless there is a radical change in conditions in the future, that many of the garages will find it very hard to make a success.

"Of course up to the present time Walter Vialle has been a sub-tenant and in that way helped out in the rent but as his term also expires with that of the present lease of clients, it will make a vast difference in carrying on that plant alone as there is nobody else in a position to take this part held by him and pay the rent.

"Another factor to consider is that the house on Main Street needs a lot of expensive repairing and will need more in the near future, therefore if it could be sold now or as far as clients are concerned, that they would be freed from this part in the lease, it would work out to the advantage of both to make this change.

"However of course if this proposition does not appeal to Mr. Vialle, then of course clients will have to proceed under the lease as drawn but I felt this was a matter that it was to the interest of both parties to consider before entering into the new lease.

"Will you therefore advise as to Mr. Vialle's wishes in the matter and also the price he is willing to sell the Main Street property for and we will see if these changes can be made."

The correspondence which ensued is detailed by the master but need not be reviewed. The negotiations ceased very soon after the new lease and other papers had been sent to Mutty, when Mutty told the lessors, who had called for the purpose of executing the lease, that it contained some provisions to which his corporation was not then ready to assent. It never was executed and the plaintiffs in the second suit ask that the corporation be ordered to execute the duplicate original of the new lease. The defendant however is a corporation duly organized, with a president, treasurer, clerk, and board of directors. It has requested a new lease as provided in the covenant, but the lease negotiated by Mutty and the plaintiffs was a materially different instru-

ment. The evidence is not reported, and the master's findings, unless plainly wrong, must stand.  While on his findings Mutty in behalf of the corporation agreed with Mr. Goodwin, acting for the plaintiffs, that a new lease substantially in accordance with the terms appearing in the draft prepared by Mr. Goodwin, which was transmitted to Mutty, should be executed, there is no evidence that either the president or the treasurer had been authorized by any vote of the directors or stockholders to bind it.   Nor is there evidence of corporate ratification.   It is plain that, quite apart from any question of the statute of frauds, which has not been pleaded, the plaintiffs having failed to establish an enforceable contract, specific performance cannot be decreed.  *New England Mutual Life Ins. Co.* v. *Wing,* 191 Mass. 192. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association,* 211 Mass. 398, 403.   While the decision in *Diebold Safe & Lock Co.* v. *Morse,* 234 Mass. 17, went upon the ground that the plaintiff could recover for the defendant's breach of contract to make a lease, no question as to the insufficiency of corporate action in making the contract was presented as in the case at bar.

The corporation, as has been said, requested a new lease January 20, 1925, and it was not until August 3, 1925, during the negotiations for the lease, that counsel purporting to be acting for the corporation wrote to counsel for the lessors and owners the following letter.

"Under the option contained in a lease given by the above named Herbert B. Vialle and Vinal S. Vialle to Torrey & Vialle Inc. dated Oct. 1, 1920 wherein the right is granted to Torrey & Vialle Inc. to purchase, as the attorneys for said lessors, I herewith give you notice that my client Mutty & Tirrell Inc. are ready to exercise said option and purchase said property for the purchase price named in said lease, namely, $35000.

"My client will be ready to pay said sum on September 1, 1925 at which time I trust a deed will be ready in accordance with said lease."

The first suit accordingly is for specific performance of the contract of purchase.  It cannot be maintained.  The

rights of the defendant under the covenant and under the contract are distinct. The plaintiff could not take repugnant positions by requesting a lease of premises which it also claimed the right to purchase, and its election of a lease, apparently uninfluenced by accident or mistake, is decisive. *Holman* v. *Updike,* 208 Mass. 466, 472, and cases there cited.

The result is, that in the second case, that part of the interlocutory decree which sustained the plaintiff's first exception to the master's report and the final decree for the plaintiff are reversed. A decree is to be entered dismissing the bill with costs. In the first case the interlocutory decree overruling the plaintiff's exceptions to and confirming the master's report is affirmed, and the final decree dismissing the bill is affirmed with costs.

*Ordered accordingly.*