WILLIAM BURTON WESCOTT *vs.* SETTIMIO LUTTAZI & another.

Norfolk.    December 8, 1936. — February 24, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Contract*, To make lease. *Landlord and Tenant*, What constitutes lease. *Equity Jurisdiction*, Specific performance.

An agreement in writing, made between a lessor and a lessee a few days before the expiration of the lease and calling for the drawing of "a proper lease or extension of the old one . . . as promptly as possible" to include a provision for annual extensions upon notice by the lessee, contemplated the drawing of a new instrument and was not itself a lease and did not require notice by the lessee as though a new lease were in force, but gave the lessee an equitable right to obtain the new instrument which he could enforce by a suit for specific performance commenced more than one year after the expiration of the old lease, though he had not given such notice during that year.

Bill in equity, filed in the Superior Court on February 27, 1936, against Settimio Luttazi and Rose Luttazi.

Demurrers by the defendants were overruled by *Fosdick*, J., who reported the rulings to this court for determination.

The letter of the plaintiff to the defendant Settimio Luttazi dated October 26, 1934, indorsed by that defendant as "approved and accepted," was as follows, a copy being attached to the bill:

"We have an understanding as to the extension of the lease under which I occupy your house on Springdale Avenue. This lease expires within the next few days. This letter, if approved and accepted by you, is to serve as a memorandum of our verbal agreement and as a basis upon which a proper lease or extension of the old one may be drawn as promptly as possible.

"I have expressed myself to you as desirous of extending the option provision of the lease from year to year at the same monthly rental of $90.

"You have expressed a willingness for me to do so in consideration of certain improvements in the property which I have caused to be made with your approval but at my expense.

"It is my understanding that we agreed that the expenditure by me of moneys for fixed improvements, of which you gave approval in advance, would entitle me to one year's extension of the option to continue occupancy at a monthly rental of $90 for every $250 expended by me on improvements.

"It is also my understanding that you did approve in advance of the improvements which I have caused to be made in the matter of water supply and to the west porch, as well as certain major improvements in and to the grounds. These latter, of course, being exclusive of the ordinary maintenance and care of the grounds.

"If the above is according to your recollection of our understanding, and if you will so indicate on a duplicate copy of this letter, I will see that the lease is modified accordingly and submitted to you for your consideration as promptly as may be."

The plaintiff alleged that the defendant Settimio Luttazi, in "signing" the letter, acted both for himself and as agent of the defendant Rose Luttazi.

*R. W. Hale,* for the defendants.

*A. B. Comstock,* (*F. H. Free, Jr.,* with him,) for the plaintiff.

QUA, J.   The case made out by the bill, filed February 27, 1936, is this: The plaintiff had held a house in Dover as lessee of the defendants under a lease dated October 28, 1931, for a term expiring October 31, 1932, with a provision for extensions for one year each upon the lessee giving written notice on or before October 1 in each year. The last such extension provided for in the lease expired October 31, 1934. On October 26, 1934, the parties agreed in writing to extend the option provision from year to year, the plaintiff to be entitled to one year's extension for every $250 which he should expend in making certain fixed improvements upon the premises, and "a proper lease or extension of the old one" to be drawn "as promptly as possible." In reliance upon the agreement the plaintiff has expended more than $5,000 in improvements. He has occupied the premises continuously, paying the monthly rent, and has been and is ready and willing to execute a new lease in accordance with the agreement, but the defendants have refused to execute such lease and on January 28, 1936, gave the plaintiff notice to quit and now contemplate evicting the plaintiff. The principal prayer is for specific performance of the written agreement.

The defendants' demurrers are now urged upon the sole ground that the plaintiff fails to allege that the plaintiff exercised his option to continue the lease by giving written notice on or before October 1, 1935. The defendants argue that because of failure to give this notice all of the plaintiff's rights ceased on October 31, 1935.

The defendants' contention cannot prevail. On October 1, 1935, there was no lease in existence. The original lease had wholly expired by its own terms. The written agreement of October 26, 1934, is most informally drawn in the shape of a letter. It plainly contemplates the drafting of

another instrument and is not itself a lease. *McGrath* v. *Boston*, 103 Mass. 369. On October 1, 1935, the plaintiff had only an equitable right to obtain the new instrument which it was the defendants' duty to give him. *Judkins* v. *Charette*, 255 Mass. 76, 81. Nothing in the agreement required the plaintiff to give notice of extensions as if the new lease were already in force any more than he was required to perform all the other terms of a lease which had not yet come into existence. His failure to give notice did not discharge his equitable cause of action. Looking at the case from another angle, it may be said that the defendants by failing to perform the agreement on their part had waived notice of extensions.

*Decrees affirmed.*