THE BANK OF AMERICAN SAMOA as agent for Mrs. Margaret Edith Meredith Frantz and her husband, Paul A. Frantz; Mrs. Frances Siafiafi Harrington and her husband, Joseph Harrington; Miss Annie Meredith, Plaintiff

**v.**

SESERA BROWN, Defendant

## No. 91-1948

## High Court of American Samoa

Civil Jurisdiction, Trial Division

## May 17, 1948

A. A. MORROW, *Chief Justice;* NUA, *District Judge;* and APE, *District Judge.*

DECISION

Heard at Fagatogo, American Samoa May 4th and 6th, 1948.

E. D. Ferretti, counsel for complainants; Tuiasosopo, counsel for respondent.

MORROW, *Chief Justice.*

██ Thomas Meredith died in 1918. His six children to wit, Mrs. Margaret Edith Meredith Frantz, Mrs. Frances Siafiafi Harrington, Miss Annie Meredith, Mrs. Rosie Meredith Mann Leota, Mrs. E. Betham, and Arthur S. Meredith survived him. They inherited from their father a portion of the land "Taumauga" on which is located the Sadie Thompson Inn. These children, their father dying intestate, became tenants in common of the property. *Clarke v. Dirks,* 178 Iowa 335, 160 N.W. 31; 62 C.J. 416; I Tiffany on Real Property (2d Ed) 644.

Mrs. E. Betham and Rosie Meredith Mann Leota conveyed their shares to their brother, Arthur S. Meredith on May 8, 1944 and May 17, 1944, respectively. On April 3, 1944 Arthur S. Meredith leased the premises for a period of five years from April 1, 1944 to respondent, Sesera Brown. The lease covered the entire interest in the premises and not just the undivided share of Arthur S. Meredith. Brown understood when he took the lease that Arthur Meredith had authority to act for the other heirs as well as for himself.

The Bank of American Samoa as agent for Mrs. Margaret Edith Meredith Frantz and her husband Paul A. Frantz, Mrs. Frances Siafiafi Harrington and her husband

Joseph Harrington and Miss Annie Meredith brings this action to cancel the above lease alleging that Arthur Meredith had no authority from his last three-named sisters to lease their undivided shares in the premises and that the respondent has breached a number of covenants in the lease. In addition the complainants pray for the abatement of an alleged public nuisance.

■ The deeds of Rosie Meredith Mann Leota and of Mrs. E. Betham to Arthur S. Meredith executed subsequent to the lease operated under the familiar doctrine of estoppel by deed (assuming that Arthur did not have authorization to lease the shares of these two sisters) to vest a leasehold interest in their undivided shares in Brown for the unexpired term of the lease, there being a covenant for quiet enjoyment therein. See Tiffany on Real Property (2d Ed) 2117 and 2126.

■ None of the complainants was in American Samoa at the time of the hearing to testify. Arthur Meredith, the lessor, was also outside the jurisdiction of the court. There were no depositions introduced. There was no direct evidence before the court as to whether or not Arthur S. Meredith when he made the lease was authorized to act for his sisters, Mrs. Margaret Edith Meredith Frantz, Mrs. Frances Siafiafi Harrington and Miss Annie Meredith. "Generally speaking, the law indulges in no presumption that an agency exists. It is sometimes asserted that agency is never presumed. It is also said that agency will not be presumed from the mere fact that one person does an act apparently for another." 3 C.J.S. 252. However, the presumption of lack of authority is rebuttable. The records of the Bank of American Samoa in connection with the management of the Thomas Meredith Estate in Tutuila, and which were before the court, indicate pretty clearly that as early as September 1939 these three sisters did execute powers of attorney to their brother, Arthur S. Meredith, to

manage their respective interests in the Meredith estate in Tutuila. Nevertheless, since we are of the opinion that these three complainants are not entitled to any relief in this case, whether they authorized their brother to act for them or not, we shall assume in deciding the case that they did not appoint Arthur S. Meredith as their agent.

If Arthur Meredith did not have authority to lease the shares of the three complaining sisters to Brown, it does not follow that the lease is void. It is valid with respect to Arthur Meredith's one-sixth interest and the other two-sixths interest of his sisters, Rosie and Mrs. E. Betham, and Sesera Brown became a tenant in common along with Mrs. Frantz, Mrs. Harrington and Miss Meredith for the duration of the lease. "All the lessors who signed the lease acquiesced in the delivery of it to the plaintiff, and if it is not binding on those not signing it, yet it operates to transfer to plaintiff the possession and right in the property for the term of the lease by those executing it, and thereby plaintiff became the tenant in common with the other owners." Eakin, C. J. in *DuRetts v. Miller*, 60 Oregon 91, 93; 118 Pacific 202; Ann.Cas. 1913 D, 1163, 1164, a case in which some tenants in common signed the lease of a farm to the plaintiff and the others did not. The court held that the lease was valid as to the tenants in common who signed it.

Our conclusion is that even if Mrs. Frantz, Mrs. Harrington and Miss Meredith did not authorize their brother to make the lease, they have no right to have the lease cancelled for that reason and that Brown merely became a tenant in common with them for the duration of the lease. We do not wish to be understood as saying that Arthur Meredith was not authorized to act for the three complaining sisters. We make no finding one way or the other on this point since it is not necessary to a decision.

■ The complainants seek a cancellation of the lease for alleged breaches of certain covenants therein by lessee Brown. In view of the fact that the lease does not contain a provision for its forfeiture for breaches of the covenants or any of them, our conclusion is that the lease cannot be cancelled conceding that some of the covenants were breached. "In the absence, however, of an express stipulation of proviso to that effect, the general rule is that the breach by the lessee of the covenants or stipulations on his part contained in the lease does not work a forfeiture of the term, since the lessor's remedy is by way of a claim for damages. In the absence of a stipulation for a forfeiture, a lessee does not forfeit his term by the nonpayment of rent or of taxes which he has covenanted to pay." 32 Am.Jur. 720.

■ "The non-payment of rent, in the absence of a provision therefor in the lease or of a statute so declaring, does not operate as a forfeiture of the term or confer upon the lessor any right of re-entry, . . ." 32 Am.Jur. 723. To the same effect, see *Judkins v. Charette*, 255 Mass. 76, 151 N.E. 81, 45 A.L.R. 1. It is claimed by the complainants that the lease should be cancelled because it provides for an annual rental of $1,200.00 payable yearly in advance and the respondent has at times during the lease paid the rent at the rate of $100.00 per month in advance. If a lease containing no forfeiture clause cannot be forfeited for nonpayment of rent, it clearly follows that it cannot be forfeited because the rent is paid monthly in advance instead of yearly in advance. Furthermore the evidence in this case convinces us that the lessor Arthur S. Meredith subsequent to the making of the lease agreed with respondent Brown that he might pay the rent monthly in advance instead of yearly in advance.

■ It was argued that the parol evidence rule made evidence of a subsequent oral change as the time of pay-

370

ment of rent inadmissible. This is not correct. "The rule which forbids the introduction of extrinsic evidence to affect a written instrument does not exclude parol proof of 'the existence of any distinct, subsequent, oral agreement to rescind or modify any such contract, grant or disposition of property, provided that such agreement is not invalid under the statute of frauds or otherwise.'" Jones on Evidence in Civil Cases (4th Ed.) page 844 citing Stephen, Evidence, art. 90. That this is sound law is well established. There is no statute of frauds in American Samoa. A Statute of Frauds is in force in the several states only by virtue of its adoption by the legislatures thereof. The English Statute of Frauds, 29 Car. II, c. 3, requiring leases of land for a term of more than 3 years to be in writing was not brought to this country with the common law. 49 Am. Jur. 364; *McKennon v. Vinn*, 1 Okla. 327, 33 Pac. 582, 22 L.R.A. 501. Nor was it brought to American Samoa with the common law. Since the lease from Arthur Meredith to Brown was not required to be in writing in the first place, its terms could be modified by subsequent parol agreement. There was no breach of the covenant as to the time when rent should be paid. Any change in time of payment was the result of a mutual agreement.

 The lease contains a covenant to the effect "That the lessee during the said term shall pay the fire insurance premium on the policy covering the said premises and also all annual taxes payable thereon to the Island Government." From the evidence it was clear that there was a policy covering the Sadie Thompson Inn at the time the lease was made. The premium on that policy has been paid to date by Sesera Brown. It is obvious from the terms of the covenant that the lease did not require the procurement of a new policy nor did the covenant require additional insurance to be procured should the insured building increase in value. The covenant required Brown to "pay

371

the fire insurance premium on the policy covering the said premises." This obviously refers to the policy in existence at the time the lease was made. Brown has performed this part of the covenant to the letter. Whether he has failed to pay the taxes was not clear to us from the evidence. But whether he did or not, there being no forfeiture clause in the lease, makes no difference as far as the right to cancel the lease is concerned. "In the absence of a provision for forfeiture of the term, although it is a common practice to stipulate that the lessee's breach of this covenant to pay the taxes will give the lessor the right to terminate the lease, the courts will, as in other cases, enforce such a provision." 32 Am.Jur. 727.

We think that there was no breach of the covenant to repair the building and to keep it repaired. The evidence showed that prior to November 1945 Brown spent $1,009.37 for lumber which went into the Sadie Thompson Inn to put it and keep it in repair. How much was spent for labor did not appear. However, it did appear that as many as eight carpenters had been employed by Brown at one time to put the building in repair. It must be remembered that Pago Pago is not New York City or Washington, D.C. What would be considered as putting and keeping the Sadie Thompson Inn in repair might very well not be considered as putting the Waldorf Astoria or the Statler in repair. In his final argument the counsel for the complainants stated that the Sadie Thompson Inn could be sold in its present state for $12,500.00, and that at the time the lease was made the building was worth about $3,200.00. The land on which the Inn stands could not be worth as much as $2,500.00. If Brown, through repairs and improvements to the property has increased the value of the building from $3,200.00 to at least $10,000.00 it would seem that he has fulfilled his covenant to repair the building and keep it in repair. Brown, in addition to the repairs

just mentioned, has spent an additional $8,000.00 in putting the Inn in condition to cater to tourists.

█ It appears from the evidence that Brown, or his agent, has used the building as a lodging house without first procuring a license therefor as required by Sec. 730 of the Code, and that he has violated his covenant not to "use or permit to be used the said building or any part thereof for any illegal or immoral purposes." It should be stated that there was no evidence whatever of any use of the building for immoral purposes; the breach relating to the use for illegal purposes only. In the absence, however, of a provision for forfeiture, the lease cannot be cancelled because of the breach of this covenant. "At common law, in the absence of a provision for forfeiture, a lessee does not forfeit his term by using the demised premises for an illegal purpose or business." 32 Am.Jur. 730. To the same effect is *Dobbins's Distillery v. United States*, 96 U.S. 395, 24 L.Ed. 637.

█ We do not believe from the evidence that Brown has assigned his lease or any part thereof, despite the fact that there was considerable circumstantial evidence that an assignment might have been made in violation of the covenant not to assign without the written consent of the lessor. Even if there was an assignment in violation of the covenant it would be no ground for forfeiture. "The rule that an express provision in the lease is necessary in order to work a forfeiture applies equally well not only to breach of covenant to pay rent but also to the breach of a covenant against assigning or subletting, the breach of a covenant as to the payment of taxes and assessments, the breach of a covenant as to the use of the premises or the breach of a covenant to make repairs." 51 C.J.S. 683.

█ The occupation of the basement of the Inn as a warehouse by G.E.C. Reid & Co. began under a lease made

prior to 1928. The evidence indicated that this lease was still in effect when the lease which is sought to be cancelled was executed on April 3, 1944. The recognition of this lease of the basement by respondent Brown did not constitute a subletting in violation of his covenant not to assign the lease "or any part thereof without first obtaining the consent in writing of the lessor."

About a year ago when it appeared that the Samoan Area Airways might bring tourists to Tutuila, Brown made extensive repairs and additions to the Sadie Thompson Inn so as to be able to provide suitable accommodations for the prospective tourists. He nailed coconut fronds and laufala mats to the walls and ceilings of the inn. Besides praying for a cancellation of the lease the complainants asked the court to "declare the coconut leaves and laufala mats which have been nailed to the walls and ceilings of the Sadie Thompson's Inn to be a fire hazard to life, limb, and property and to order the removal of the same."

This second prayer is based upon the claim that the coconut leaves and laufala mats make the inn a fire hazard to buildings nearby to such an extent that it constitutes a public nuisance. We have no statute or regulation covering this matter and are therefore governed by the common law with respect to it.

 "In order to render a building a nuisance, by reason of exposure of other buildings to danger from fire, the hazardous character of the business must be unmistakable, the danger imminent, and the use of such an extraordinary character as to leave no doubt of the nuisance. . . . A structure is not rendered a nuisance by the mere fact that its presence enhances the rates of insurance on neighboring property." 46 C.J. 680. 1 Wood, Nuisances, (3d Ed.) Sec. 148 is to the same effect. See also *Harris v. Randolph Lumber Co.* 175 Ala. 148, 57 So. 453; *Duncan v. Hayes* 22 N.J. Eq. 25. Mr. Wood also indicates in the above reference

from his work on Nuisances that before the building constitutes a nuisance, the situation must be such "as to make injurious results probable." Mere possibility of injurious results is not enough. In *Radney v. Ashland*, 199 Ala. 635, 75 So. 25, L.R.A. 1917 E. 355, the court held that a dilapidated barn of pine construction which was used as a livery barn and garage with large quantities of hay, fodder and other feed stuffs and also a quantity of gasoline stored therein was not a public nuisance despite the inflammable character of the contents and the further fact that a fire originating in the barn would probably have spread to other buildings one of which was a jail inhabited by prisoners. Every wooden building is something of a fire hazard but such buildings are not per se nuisances. In our opinion the evidence does not show that the danger of a fire at the Inn is imminent. While dangerous results are possible we do not regard them as probable. It is our conclusion that the laufala mats and coconut fronds nailed to the walls and ceilings of the Inn do not make it a public nuisance within the foregoing principles.

 It may very well be that there should be some legislation governing the use of coconut fronds and laufala mats in hotels and inns because of the admitted increased possibility of fire. However, that is a matter solely for the legislative department of the government to determine and not for the courts. "In general, the legislature may declare anything to be a nuisance which is detrimental to the health, morals, peace, or welfare of the citizens of the state. It may also enlarge the category of nuisances by declaring acts or things to be nuisances which are not such at common law, even though it thereby injuriously affects the use or value of property as it existed at common law." 39 Am.Jur. 293.

Our conclusion is that complainants' petition should be and it is hereby DISMISSED.

Costs in the sum of $50.00 are hereby assessed against the complainants, the same to be paid within 60 days.