CHOW TIM *v.* RICHARD LOPEZ.

NO. 2784.

WALTER S. TANABE *v.* RICHARD LOPEZ.

NO. 2815.

ARGUED JULY 2, 1952.                    DECIDED MARCH 18, 1953.

LE BARON AND STAINBACK, JJ., AND CIRCUIT JUDGE
CORBETT IN PLACE OF TOWSE, C. J., DISQUALIFIED.

The two cases (equity number 4953 and equity number 5035) were consolidated for trial as both involve the question of the legality of an attempted forfeiture of a lease and the claims for damages against the lessor because of illegal trespass and re-entry following such alleged forfeiture of lease.

In substance the pleadings and proof showed that the Waialua Agricultural Company, Limited, on May 8, 1941, itself a lessee, sublet certain premises comprising 5.13 acres of farm land to appellant, Richard Lopez, for a term of twenty-nine years. Lopez sublet the same 5.13 acres to Walter S. Tanabe, appellee, for a term of twenty-five years on June 27, 1941. The covenants and conditions contained in these two successive subleases are identical except as to rent, Lopez agreeing to pay to the Waialua Agricultural Company $183.90 per year plus taxes on the premises, and Tanabe, his sublessee, agreeing to pay Lopez $420 per year plus taxes. Tanabe had leased this land directly from the Waialua Agricultural Company for some years prior to Lopez coming into the picture.

Tanabe sublet about one acre of the premises to appellee, Chow Tim, a Chinese farmer who worked part time for Tanabe. Chow Tim, with his wife and seven children, had lived on this land since 1922, raising vegetables, flowers and chickens for the market and for their own use. Tanabe negotiated his sublease with the understanding of both Lopez and the Waialua Agricultural Company that he was to take care of Chow Tim by allowing him to occupy the portion of the premises previously occupied by him. The remainder of the land Tanabe devoted to his own agricultural pursuits, the growing of bananas, vegetables and lotus.

There were several old wooden buildings on the premises in 1941, the principal one being a two-story single-wall

house occupied by Chow Tim throughout his occupancy of almost thirty years. Its second story had been boarded up and unused since about 1932 and it was at least seventy-five years old. The premises also included a small dwelling and garage, both used by Chow Tim, and a storage warehouse used by Tanabe. Certain fences were erected and chicken coops were kept by Chow Tim on the section of land occupied by him.

Under the arrangements existing, the Waialua Agricultural Company paid the taxes and collected the same from Lopez, and Lopez was supposed to be reimbursed that amount by Tanabe. In 1943 a dispute arose between Tanabe and Lopez as to the amount of rent and taxes due after Tanabe discovered that Lopez had overcharged him for taxes for the preceding years.

At about this time (1943) Lopez attempted to sell his sublease to Tanabe for $7,000 and made an alternative suggestion that a new lease be executed for ten years by Tanabe at a rental of $700 per annum, and threatened that unless one or the other of these offers was accepted he would cancel Tanabe's sublease on the ground of failure to make repairs, which repairs incidentally had not been specified. Tanabe rejected both proposals. This same year Marques, Lopez' agent, refused to accept payment of rent for the second half of 1943 and Tanabe finally transmitted a certified check to his attorney.

Lopez changed his collection agency frequently and apparently without any advance notice to Tanabe. In January 1946 an attorney representing Lopez accepted Tanabe's check for rental due for the first half of that year, but in the second half the attorney was given Tanabe's check for the rental, which check was neither returned nor cashed. In January 1947 the same attorney told Tanabe he was not handling the matter but on

February 26, 1946, he wrote Tanabe to make repairs on the building within thirty days but without any specification of defects to be repaired; and on May 20, 1946, gave Tanabe notice to vacate for failure to make repairs and threatened a suit in ejectment.

In July 1947 Lopez did bring a proceeding for the cancellation of the Tanabe lease (equity number 4732) to which a demurrer was sustained.

Relations between respondent Lopez and the petitioner Tanabe were not harmonious from 1943 but they grew more strained and Lopez became very hostile to Tanabe after Tanabe, with the consent of Chow Tim and the Waialua Agricultural Company, Limited, agreed on November 25, 1946, to sublet to Caesar Lopez, brother of Richard Lopez, a portion of the demised premises.

In November 1947 Lopez re-entered the premises, claiming a forfeiture of the lease for the nonpayment of the entire rental and taxes for the years 1946 and 1947, amounting to $936.49, and failure to make repairs (unspecified). After such purported re-entry, an affidavit was made and recorded in the bureau of conveyances by respondent Lopez reciting the foregoing facts and claiming forfeiture of the lease for breach of covenants to pay rent and taxes and repairs. Petitioner Tanabe claims that this recorded affidavit constitutes a cloud upon his title.

Though Chow Tim continued to reside in the house and cultivate the disputed land, respondent Lopez re-entered upon the premises, tore down the warehouse and deposited lumber on the premises and again re-entered and erected fences and pigpens in which he placed pigs, which threatened to contaminate the petitioner's lotus fruit, and converted the lotus to his use, and on numerous occasions committed like acts of trespass.

By his petition Tanabe alleged in substance the foregoing facts and prayed for a restraining and mandatory injunction against Lopez, a declaration that petitioner's sublease was valid and subsisting, the removal of cloud on title to this leasehold interest, an accounting of rent and taxes owed by him, of the crops converted by Lopez, and for other equitable and proper relief. A temporary injunction was granted.

Chow Tim, the sublessee, alleged that respondent Lopez wrongfully entered his premises, tore down fences and chicken coops, destroyed plants and vegetables, deposited old lumber upon the premises, and threatened that he would continue to enter and would cause irreparable injury unless he be restrained. He prayed for damages in the sum of $5,000 to personal property and loss of use and enjoyment of the premises and asked for such damages and for injunction.

After a hearing the chancellor found that prior to 1946 Lopez accepted from Tanabe the rent and taxes and thus any claim for forfeiture for anything that had occurred prior to that date was waived.

He made several other findings, all in favor of Tanabe. He found that all the various payments of rent and taxes, as alleged by Tanabe, were duly made and satisfied the conditions of the lease for which the right of forfeiture was given; that the alleged re-entry by Lopez in November 1947 did not effect a forfeiture of lease for nonpayment of rent because the amount of rent demanded by Lopez at that time exceeded by at least $210 the rent then due and owing from Tanabe, and that a genuine dispute existed between them over the amount of rent and taxes then due and owing. He also found that there was no failure to repair that would justify re-entry, in this respect finding that the buildings on the premises were very old, of

cheap construction, and in poor condition at the inception of the lease; that repairs were made and there was no undue delay in making them; that there was no substantial difference in the condition of the buildings between 1941 and 1947.

The chancellor made a further finding that the payment by Tanabe of $936.49 in August 1948 resulted in the acceptance by Lopez of the rent through the first half of 1948 and that Lopez thereby waived any right he may have had for nonpayment of that rent.

He ruled that the sublease to Tanabe was in full force and effect, that the value of the lotus removed from the premises by Lopez was $1982.48, that Tanabe was entitled to the injunctive relief prayed for, and Chow Tim was entitled to damages in the sum of $200.

Much of appellant's very able brief deals with the decision below as being "an equitable relief against forfeiture." It is true that the chancellor buttressed his decision holding that the landlord did not effect a legal forfeiture and termination of Tanabe's sublease by also deciding that the acceptance of rent and taxes in 1948 waived forfeiture. If the first part of the decision is correct, it is unnecessary to discuss the question of equitable relief against forfeiture.

The findings of fact made by the chancellor are not binding upon this court, yet when the evidence is conflicting and the findings depend upon the credibility of witnesses and the weight of oral testimony, great weight will be given to the findings because the chancellor saw and heard the witnesses and was in a better position to pass upon their credibility. (*McCandless* v. *Castle,* 25 Haw. 22; *Hospital* v. *Wodehouse,* 33 Haw. 846; *Estate of Allen,* 35 Haw. 501; *Watumull* v. *Ettinger,* 39 Haw. 185.)

The covenants relative to repair contained in the lease

are as follows: "That he will, at his expense from time to time and at all times during the said term well and substantially repair, maintain, amend and keep all buildings and improvements now or hereafter built on the land hereby demised with all necessary reparations and amendments whatsoever;

"That he will permit the Lessor and its agents, at all seasonable times during the said term, to enter the said premises and examine the state of repair and condition thereof, and will repair and make good all defects of which notice shall be given by the Lessor or its agents, within thirty (30) days after the giving of such notice."

Lopez had identical covenants with the Waialua Agricultural Company in his sublease from that company.

It has been pointed out that the buildings were old, of cheap construction, that the second story of one of them had been boarded up and unused since 1932, and that Chow Tim had for some thirty years occupied as his residence this house which was about seventy-five years old. Both Chow Tim and Tanabe testified that they had made minor repairs from time to time and that the condition of the buildings was about the same in 1946 and 1947 as at the beginning of the lease in 1941. They were corroborated in this by Mr. Joseph Matson, civil engineer for Waialua, whose duties included periodic inspection of its sublet lands; he stated he had visited these premises for such purpose in 1940, 1941, 1946 and 1947, as well as in later years; that the condition of the buildings was substantially the same at the time of the trial as in 1940 and 1941; that Waialua never insisted on extensive repairs and renovations in view of the age of the buildings, that they deemed it not worth while to put additional capital expenditures into the structures.

In construing the covenants to repair various things

are to be taken into account. Among these are the character of the building and its original construction, the use to which the building is to be put, the age of the building and its general capacity for use at the time the lease is given, the class of tenant and the kind of business of a tenant who would be likely to lease such building.

An annotation of decisions dealing with construction of such covenants to repair is contained in 45 A. L. R. 12, 35, supplemented by 106 A. L. R. 1358, which summarizes the law as follows: If the condition complained of is due to the age of the buildings and their condition at the time of the beginning of the lease, the existence of such defects does not constitute a breach of the covenant to repair. A covenant to keep the leased premises in repair does not obligate the tenant to keep the buildings up as new buildings; the extent of the repairs he is obliged to make necessarily depends upon the age and the class of the buildings. He need not give the lessor the benefit of a new replacement. To keep the structure in substantial repair complies with the covenant. No duty rests upon the lessee in the event of the dilapidation of buildings upon the leased premises to erect new structures in place of the old ones, for the character, condition, age, and value of the buildings at the time of the making of the lease must be taken into consideration.

*Crutcher* v. *Barnes,* 207 Ark. 768, 773, points out that where the premises were practically in as good shape at the time of the trial as they were when the lease was executed does not show such neglect of repairs on the part of the lessee as would entitle the lessor to declare a forfeiture of the lease.

A few of the many cases dealing with the question of a covenant to repair or keep in repair are: *Codman* v. *Hygrade Food Products Corp.,* 295 Mass. 195, 3 N. E. (2d)

759; *Judkins* v. *Charette,* 255 Mass. 76, 151 N. E. 81; *Kaplan* v. *Flynn,* 255 Mass. 127, 150 N. E. 872; *Foss* v. *Stanton,* 76 Vt. 365, 57 Atl. 942.

The findings of the chancellor that the buildings were of cheap construction, apparently seventy-five years old and in a "deteriorated" condition at the institution of the lease, that there was no substantial difference in the condition in 1947 as compared with that of 1941, that repairs were actually made and that there was no evidence of undue delay, that such buildings were too old to make capital investment justifiable, that there was no breach of covenant to justify re-entry and forfeiture of the lease, are amply sustained by the evidence.

It is obvious in the instant case that before expiration of petitioner's twenty-five year sublease the one hundred year old buildings will be completely gone; further, it appears that Caesar Lopez, brother of appellant Richard Lopez, was in 1946 and now is, according to Tanabe's petition, ready and willing to accept a sublease from Tanabe, tear down the old buildings and new ones would have already been erected but for the uncertainty and insecurity of his sublease caused by the respondent's actions. Where no injury results from the failure to strictly perform, the tenant is not to be held for a breach of covenant to repair.

It is unnecessary to review in detail the evidence relative to the payment of rents and taxes and the finding by the chancellor that a real dispute existed between Lopez and Tanabe during the years 1946 and 1947. Suffice it to say that Tanabe paid rent for the first half of 1946 through Lopez' attorney and gave or sent to the attorney his check for the second half of 1946, offered to pay that attorney for the first half of 1947 but was told he no longer handled the matter, and finally tendered the cor-

rect amount of both rent and taxes through 1947. The chancellor found that these various payments of rent and taxes were duly made and that the alleged re-entry by Lopez in 1947 did not effect a forfeiture, citing among other reasons that the amount of rent demanded by Lopez at the time of the so-called forfeiture exceeded by at least $210 the amount then due.

"Where under a lease the lessor is authorized, upon failure of the lessee to pay the rent or any portion thereof, to declare a forfeiture of the lease and to re-enter after 'demand made therefor', the making of a demand for a sum substantially larger than the amount of rent due is not a compliance with the prerequisite named and will not support an attempted forfeiture based thereon." (*Mini* v. *Hilo Sugar Co.*, 15 Haw. 480.)

It would appear from the evidence that the landlord, Lopez, was more anxious to gain possession of the premises because he thought he made an unfavorable lease and was not receiving what he regarded as a sufficient rental for the premises than to collect his rentals and have the ancient, obsolete structures thereon kept in repair.

The decree appealed from is affirmed.

*B. Houston* (also on the briefs) for appellant Lopez.

*W. Y. Char* for appellee Chow Tim was present but did not argue and filed no brief.

*R. E. Brown* (*Robertson, Castle & Anthony* with him on the brief) for appellee Tanabe.