ADOLPH LUNDIN *vs.* JOHN B. SCHOEFFEL & others.

Suffolk. December 8, 1896. — January 25, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Lease — Breach of Covenant — Forfeiture — Equitable Relief.*

A bill in equity was brought to restrain interference with the plaintiff's rights, under a lease to him of a portion of the basement of a building used as a theatre, to be fitted up for a bath establishment, containing the stipulation that the work of fitting up should be prosecuted "at such times and in such manner as shall not by noise or otherwise interfere with the use of the adjoining property as a theatre." The answer set up an entry for breach of the conditions of the lease. At the hearing, a mason, sent to ascertain the thickness of a soft terra-cotta wall, testified that he was told by the plaintiff to be as careful as he could about noise, and the driving of a chisel through the wall took only about a minute. It appeared that the noise caused a little disturbance to a matinée performance in the theatre; and the witness testified that he did not think about its being a day for a matinée, and that, if he had, he should not have gone. *Held,* that this, if of enough significance to be considered at all, might be relieved against on the ground of accident or mistake.

At the hearing of a bill in equity to restrain interference with the plaintiff's rights under a lease to him of a portion of a building to be fitted up for certain purposes, containing the stipulation, among others, that "all changes and alterations" were "to be made in good workmanlike manner," the answer to which set up an entry for breach of the conditions of the lease, it appeared that, by request of the defendant's agent, the plaintiff was hurrying the work at a place where the ground had been dug up, and his men worked at night; and that, the surface of the ground being left uneven, the plaintiff promised to have the work done properly. He testified that one of his men promised him to lay it in the spring, after the frost got out of the ground; and that no complaint

had since been made about it. *Held*, that it might be found that this ground of forfeiture was not insisted on by the defendant.

The stipulation, in a lease of a portion of a building to be fitted up by the lessee for certain purposes, that the work of fitting up is to be " prosecuted without delay to completion," means that the work is to be prosecuted without unreasonable delay; and if for two and a half months no actual work upon the premises is done, but during all this time the lessee is engaged in his preparations by entering into contracts for the work, the details of whose work and endeavors in managing these contracts are testified to at the hearing of a bill in equity to restrain interference with his rights under the lease, from which evidence it might be found that these preparations had all been completed and that he was ready to go on with the work at the time when the lessor made an entry, claiming a forfeiture, these explanations given by the lessee of his delay in the prosecution of the work are all entitled to be considered, and, if the judge found the delay not to be unreasonable, this court is not called upon to set aside that finding.

Equity will relieve against a forfeiture incurred by the breach of a covenant in a lease of real estate to prosecute the work of fitting up the premises for certain purposes without delay, in the absence of bad faith on the part of the lessee, and where no actual damage has been sustained by the lessor.

BILL IN EQUITY, filed in the Superior Court April 15, 1896, to restrain the defendants from interfering with the plaintiff's rights, under a lease by them to him of the front portion of the basement under the entrance to the building known as the Tremont Theatre, in Boston. The answer set up an entry for breach of the conditions of the lease. Hearing before *Braley*, J., who entered a decree for the plaintiff; and the defendants appealed to this court. The facts appear in the opinion.

*W. C. Wait*, for the defendants.

*F. J. Daggett & G. P. Wardner*, for the plaintiff.

ALLEN, J. The testimony in this case was given in the presence of the court, and was taken down by a commissioner, under the rule. The decree was for the plaintiff. There is no statement of the facts found, or of the rulings made. The decree, therefore, so far as it involves matters of fact, is to stand, unless it appears by the evidence to be clearly erroneous. *Wentworth* v. *S. A. Woods Machine Co.* 163 Mass. 28.

The grounds of forfeiture relied on by the defendants are three; namely, the noise, the unworkmanlike character of the work in Head Place,* and especially the delay in prosecuting the work of fitting up the leased premises for a bath establishment.

---

* Head Place is an alley adjoining the side of the building in question.

As to the first ground, viz. the noise occurring two days before the entry, the court might well find that it was of a trifling description. A mason sent to ascertain the thickness of a soft terra-cotta wall testified that he was told by the plaintiff to be as careful as he could about noise, and the driving of a chisel through the wall took only about a minute. No objection is made to this mode of ascertaining the thickness, but the noise caused a little disturbance to a matinée performance in the theatre. The witness testified that he did not think about its being Wednesday, the day for matinées, and that if he had he should not have gone. This, if of enough significance to be considered at all, might be relieved against on the ground of accident or mistake.

The way in which the surface of the ground was left in Head Place is also a slight matter, not much insisted on in argument. By request of the defendants' agent, the plaintiff was hurrying the work there, and his men worked at night. The surface of the ground having been left uneven, the plaintiff promised to have this work properly done. He testified that one of the men promised him to lay it in the spring, after the frost got out of the ground, and that no complaint had since been made about it. The court might find that this ground of forfeiture was not insisted on by the defendants.

The principal ground relied on by the defendants is the delay in prosecuting the work of fitting up. The stipulations in the lease are as follows : " The demised premises are to be fitted at the sole cost of the said lessee, and thereafter to be used as a bath establishment for Turkish and other baths, under the limitations hereinafter set forth. The work of fitting up to be begun forthwith, and prosecuted without delay to completion, at such times and in such manner as shall not, by noise or otherwise, interfere with the use of the adjoining property as a theatre, and all changes and alterations to be made in good workmanlike manner." The lease was dated November 1, 1895, and was to run eighteen years and five months, at an annual rental of fifteen hundred dollars, payable in monthly instalments. The work was in fact begun at once, and there is no complaint that it was not duly prosecuted till after January 15, 1896. The defendants' entry was on April 3. The stipulation means that

the work was to be prosecuted without unreasonable delay, and what delay would be unreasonable would depend upon the circumstances. There was no doubt a considerable delay, since from January 15 to April 1 no actual work upon the premises appears to have been done. The testimony would warrant a finding, however, that during all this time the plaintiff was engaged in his preparations by entering into contracts with different mechanics and others, — with the mason, carpenter, plumber, steam-fitter, painter, gas-piper, electric wire men, and with men to lay the floors and tiles. The details of the plaintiff's work and endeavors in arranging these contracts were testified to, and upon the evidence it might be found that these preparations had all been completed, and that the plaintiff was ready to go on with the work at the time when the defendants made their entry, claiming a forfeiture. In fact, two days before the entry the plaintiff had a mason in there making some needful preparation, causing the noise already referred to. These explanations given by the plaintiff of his delay in the prosecution of the work were all entitled to be considered ; *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382, 384 ; *Doe* v. *Ulph*, 13 Q. B. 204 ; and if the court, seeing the witnesses, found the delay not to be unreasonable, we do not feel called upon to set aside that finding.

But, even assuming that by reason of the delay the lease was forfeited, there is still the question whether a court of equity can and should grant relief. Upon the evidence, in addition to the matters hereinbefore stated, it might be found that there was no want of good faith on the part of the plaintiff, that his delay was not wilful, that no demand had been made upon him for greater haste, that no notice had been given or complaint made to him on account of his delay, that the lessors had virtually stood by without objection, that no injury resulted to them from the delay, and that, if they had not entered as they did, the work of actually fitting up the premises would at once have been actively resumed. It is true that there was testimony of some informal suggestions made to the plaintiff's legal counsel with reference to this delay ; but the plaintiff denied that any complaint reached him. The purpose of the stipulation requiring the work to be prosecuted without delay appears to have

been to furnish to the lessors security for the payment of the rent. In point of fact, the accrued rent was all paid. There was no damage to the lessors' property, no waste, no omission to make needed repairs, no increased risk of loss by fire as in the case of an omission to keep the premises insured, and it is not suggested in argument that there was any such damage to the lessors as calls for compensation. The default on the part of the lessee was merely the omission to proceed promptly enough with the work of making improvements. It was a failure to pay out money for this purpose.

If the lessee's failure had been an omission to pay rent promptly as it became due, it is plain that a court of equity might relieve against a forfeiture on this ground, though the omission was even wilful. But the lessee's failure in this case was merely an omission to do something promptly which was only useful to the lessors by way of security for the future payments of rent. It was not like a case where the omission caused a present injury or increase of risk to the lessors, as in the case of waste, non-repair, or non-insurance.

In such a case, a court of equity is not required to refuse relief against a forfeiture, but may look into the circumstances, and determine whether on the whole it is just and right that such relief should be granted. In *Mactier* v. *Osborn*, 146 Mass. 399, a forfeiture incurred by breach of a covenant to insure, caused by accident or mistake, was relieved against. The court said : " Where there has been a breach of a covenant to pay rent equity will relieve against a forfeiture although the breach is wilful on the part of the lessee ; and where there has been a breach of a covenant to perform some collateral duty, such as to repair or insure, which has been caused by accident or mistake, equity will relieve if the lessor can by compensation or otherwise be placed in the same condition as if the breach had not occurred." The precise question now before us did not arise in that case. The omission in this case is not of the same character as a failure to repair when waste is going on, or to insure. It is merely a failure to pay out money, and is much like an omission to pay taxes, which, in the absence of bad faith, and where the position of the parties has not been changed, and no new rights have intervened, has been held not to bar the

lessee from relief. *Giles* v. *Austin*, 62 N. Y. 486. *Noyes* v. *Anderson*, 124 N. Y. 175.

Taking all the circumstances of the present case into account, a court of equity might, without violating any settled rules, grant relief against the forfeiture, if it found that a forfeiture had been incurred. *Sanborn* v. *Woodman*, 5 Cush. 36. *Atkins* v. *Chilson*, 11 Met. 112, 117. *Hagar* v. *Buck*, 44 Vt. 285. *Henry* v. *Tupper*, 29 Vt. 358. *Sunday Lake Mining Co.* v. *Wakefield*, 72 Wis. 204. *Hill* v. *Barclay*, 18 Ves. 56, 58. Story, Eq. Jur. §§ 1314–1323.                                    *Decree affirmed.*