WORCESTER HERITAGE SOCIETY, INC. *vs.* FREDERICK E. TRUSSELL.

No. 89-P-784.

Worcester. November 15, 1990. - September 9, 1991.

Present: ARMSTRONG, BROWN, & JACOBS, JJ.

*Contract*, Rescission. *Housing Court*, Jurisdiction. *Jurisdiction*, Equitable, Housing Court.

A party alleging breach of a contract to complete the historic restoration of a house within a stated time was not entitled to rescission of the contract, where the other party's delay in performance did not amount to either a failure of consideration or a repudiation of the contract; in the circumstances, the plaintiff was left to the remedy of damages and to the self-help remedy provided in the contract. [345-347]

The Housing Court had jurisdiction of an action by a nonprofit corporation dedicated to preserving historically significant buildings against an individual to whom it had sold a house, alleging breach of its contract with the buyer under which he would complete historic restoration of the house within a stated time, and seeking rescission of the contract and reconveyance of the house. [347]

CIVIL ACTION commenced in the Superior Court Department on October 14, 1986.

On transfer to the Worcester County Division of the Housing Court Department, the case was heard by *John G. Martin*, J.

*John O. Mirick* for the plaintiff.
*Stephen Gordon* for the defendant.

ARMSTRONG, J. The plaintiff (the society), a private, nonprofit organization dedicated to the preservation of historically significant buildings in Worcester, appeals from a judgment of the Housing Court which refused it a rescission of a contract and reconveyance of a house which it had conveyed to the defendant (Trussell) in 1984. The house at that time was vacant and uninhabitable, with no heat, electricity, or

plumbing, was in severe disrepair, and had recently been damaged by fire. The sale was for $20,100, Trussell agreeing to abide by historic preservation restrictions and to do a complete historic restoration. The exterior portion was to be completed in one year, failing which the society could, at its option, engage workers to complete the exterior restoration at Trussell's expense. No time limit was specified for interior restoration. There was no requirement that the house be opened to public viewing or that the house be occupied.

Trussell, prior to the conveyance, gave the society, as required, evidence of his financial ability to invest the purchase price plus $45,000, the then estimated cost of the restoration. About a year and a half after the transfer, however, Trussell lost his job, with the result that work on the house, which had proceeded less rapidly than anticipated, was further slowed. The society sued for rescission in 1986 but then agreed, by way of a stipulation, to stay its hand for a further period. The case was not tried until 1989.

The society put in evidence that the exterior work was at that time still uncompleted, particularly on the rear side of the house, where sash was missing on one or two windows and a porch was supported on jacks. Trussell testified that he had scraped forty to fifty percent of the exterior to bare wood; replaced most of the clapboards on the south, sun-exposed side; prime-coated the entire house and finish-coated sixty percent of it; replaced most of the sash (most of the windows were boarded up before the sale); done roof repairs (taking some portions down to the carrying timbers); gutted most of the interior of the house, including all plaster, and carted the materials away. He acknowledged having done no restoration of the interior. The needed work, he estimated, would cost $100,000, far in excess of what had been estimated at the time of the sale. In general, he painted a picture, which the judge accepted, of meticulous, steady progress on the house, primarily by his own work, but hampered by shortage of funds which he hoped would soon be alleviated by settlement of his father's estate. The judge found the exterior work to be sixty-five to seventy-five percent com-

plete. Acting "in [his] discretion," he refused rescission (the only remedy sought in the complaint) and suggested that the society, if it continued to be dissatisfied with the exterior progress, employ the self-help remedy set out in the contract.

There was no error based on the findings. There is ample authority for refusing rescission where there has been only a breach of contract rather than an utter failure of consideration or a repudiation by the party in breach. "In the absence of fraud, nothing less than conduct that amounts to an abrogation of the contract, or that goes to the essence of it, or takes away its foundation, can be made a ground for rescission of it by the other party." *Runkle* v. *Burrage*, 202 Mass. 89, 99 (1909). "Ordinarily equity will not set aside a contract at the suit of a party thereto on the sole ground of nonperformance by the other party of one of his agreements therein contained, in the absence of an agreement for termination upon breach by such nonperformance, where the breach is not of such a material and substantial nature as to excuse the party suing from proceeding with the contract, but will leave the party suing to his remedy by way of damages." *Barry* v. *Frankini*, 287 Mass. 196, 199-200 (1934). "The right to rescind a contract on the ground of failure of consideration exists only where the failure of consideration amounts to an abrogation of the contract, or goes to the essence of it, or takes away its foundation." *DeAngelis* v. *Palladino*, 318 Mass. 251, 257 (1945). See 5 Corbin on Contracts § 1104, at 561-562 (1964) ("In the case of a breach by non-performance . . . , assuming that there has been no repudiation, the injured party's alternative remedy by way of restitution depends upon the extent of the non-performance by the defendant. . . . The injured party . . . can not maintain an action for restitution of what he has given the defendant unless the defendant's non-performance is so material that it is held to go to the 'essence' . . ."). See also *Plumer* v. *Houghton & Dutton Co.*, 281 Mass. 173, 175-176 (1932); *Vincent* v. *Torrey*, 11 Mass. App. Ct. 463, 466-467 (1981). Cases such as *Nevins* v. *Ward*, 320 Mass. 70, 73-74 (1946), discussing "substantial performance" in the context

of an action by a construction contractor seeking payment for work done, are not determinative here.

Trussell's actions certainly have not amounted to a repudiation of the contract; the judge found that he intends to complete the restoration, although the time fixed in the contract for completion of the exterior has been greatly exceeded and may not have been realistic from the start. There has not been a total failure of consideration, Trussell having paid the purchase price and invested some additional sums and much labor in the restoration work. The visibly uncompleted portions of the exterior restoration are at the rear side of the house, the front appearing (in photographs reproduced in the appendix) quite presentable. The society's concern was focussed primarily, as its director testified, on the exterior appearance of the houses it rescued (explaining the cursory treatment of interior renovation in the contract[1] and the absence of a time limit therefor or of any provision for opening the house to public view). The provisions of the purchase and sale agreement that time was of the essence applied to the closing date of the conveyance, not to the restoration provisions.

Courts have traditionally applied discretion in affording relief by way of rescission, as they have with most equitable remedies. See *Lima* v. *Lima*, 30 Mass. App. Ct. 479, 484 (1991). Thus, the judge could properly take into account the "sweat equity" (in the judge's phrase) that Trussell had put into the restoration, which might be forfeit if a rescission were ordered. He could also properly take into account the fact that the contract expressly contemplated the possibility of delay in completion of the exterior work and empowered the society in that circumstance to engage a contractor to complete the exterior work and charge all costs (including

---

[1]The contract did not speak of "interior restoration" (the parties infer the requirement from the contract's requirement that Trussell "complete a certified historic restoration"). The time limit applied only to the exterior restoration, and it was only with respect to the exterior work that the society imposed restrictions on alterations of architectural form.

architectural fees and attorney's fees) to Trussell. It was not shown that this remedy would be ineffectual.[2] [3]

*Judgment affirmed.*

---

[2]Even if the expense should cause Trussell to lose the house, the preservation restrictions, which are recorded, run with the land. Parenthetically, we note that a different case would be presented if the contract contained a specific provision for reconveyance where the society is dissatisfied with the progress of the restoration.

[3]Although neither party raises any question concerning the jurisdiction of the Housing Court, we have considered the question, as we must, see *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 85 (1979), and, while the question is close, we conclude that the Housing Court did have jurisdiction, this being a "civil action[ ] arising . . . under the provisions of common law and of equity . . . concerned directly or indirectly with . . . the possession, condition, or use of any particular housing accommodations." G. L. c. 185C, § 3, first sentence, as appearing in St. 1987, c. 755, § 3. This case is somewhat analogous to *Haas* v. *Breton*, 377 Mass. 591 (1979), which also concerned common law litigation between a home buyer and the seller involving the condition of the premises. That decision held that the Housing Court had no jurisdiction, but "[t]he Housing Court's jurisdiction was greatly expanded by [St. 1979, c. 72, § 3]," *Tedford* v. *Massachusetts Hous. Fin. Agency*, 390 Mass. 688, 693 n.7 (1984), which "provided for a more expansive description of housing-related subject matter [jurisdiction]" than its predecessor, *Patry* v. *Liberty Mobilhome Sales, Inc*, 15 Mass. App. Ct. 701, 705 (1983). The amendment was intended to overrule the *Haas* decision and that in *Chakrabarti* v. *Marco S. Marinello Assocs., Inc.*, 377 Mass. 419 (1979). *Goes* v. *Feldman*, 8 Mass. App. Ct. at 87. *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. at 705. *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. 888, 894 & nn. 7 & 8 (1990). See also *Graveline* v. *BayBank Valley Trust Co.*, 19 Mass. App. Ct. 253 (1985), an action by the buyer of a home against the seller with counts in tort and under G. L. c. 93A, where it was held that the Housing Court had jurisdiction. Unlike the *LeBlanc* case, 406 Mass. at 896, which was a products liability action against manufacturers of lead paint, and *Boston* v. *Kouns*, 22 Mass. App. Ct. 506 (1986), which was an action to shut down a solid waste transfer station said to be a nuisance, the connection here of both parties to the house is direct and particular. Moreover, the subject matter of the suit, the condition of the premises, is not remote from the Housing Court's field of expertise, "[h]ousing specialists [being] required to be knowledgeable in the fields of maintenance, repair, and rehabilitation of housing . . . ." *LeBlanc* v. *Sherwin Williams, Co.*, 406 Mass. at 896. Compare *Ryan* v. *Kehoe*, 408 Mass. 636, 640-642 (1990).