FRANCIS M. DiBELLA, trustee,[1] *vs.* PETER J. FIUMARA.

No. 04-P-537.

Essex. March 9, 2005. - June 2, 2005.

Present: BERRY, DREBEN, & DOERFER, JJ.

*Summary Process. Landlord and Tenant,* Termination of lease, Alterations, Lease as contract, Forfeiture of lease. *Contract,* Lease of real estate, Performance and breach. *Real Property,* Lease.

Discussion of the law governing the right of a landlord to terminate a lease for breaches by a tenant, when the breach is material, insignificant, or neither material nor insignificant. [643-646]

The evidence in a summary process action supported the judge's subsidiary findings leading to his determination that the tenant's breach of a lease (by altering a shed located on the leased property without previously obtaining the landlord's consent) was not material, namely, that the clause in the lease dealing with alterations, although important to the parties, was not an essential and inducing feature of the lease agreement, and that the factors for determining materiality contained in the Restatement (Second) of Contracts § 241 (1981) also weighed against the breach being material [646-648]; on the other hand, because the breach was not insignificant, the judge erred in not taking into account the default clause of the lease, which permitted the landlord to take possession of the leased property in the event of a default, but the error did not require remand where the landlord conceded on appeal that the judge had determined that there should be no forfeiture due to the breach [648-650].

SUMMARY PROCESS. Complaint filed in the Peabody Division of the District Court Department on August 5, 2002.

The case was heard by *Robert Ronquillo, Jr.,* J.

*Richard J. Fallon* for the defendant.

*Mitchel S. Ross* for the plaintiff.

DREBEN, J. In this summary process action, a District Court judge sitting without a jury found that the plaintiff (lessor) was not entitled to possession as the breach of the lease by the

---

[1]Of DiBella Realty Trust.

defendant (lessee) was not material. The Appellate Division reversed and the defendant appeals, arguing that the judgment entered by the trial judge should be upheld. We reverse the order of the Appellate Division.

1. *Background.* We set forth the relevant portions of the lease and take our facts primarily from the subsidiary findings of the trial judge, none of which are challenged as clearly erroneous. The parties negotiated for a period of more than eight months for the purchase by the defendant of the business, known as the "Golden Banana Club," an adult entertainment club in Peabody featuring nude female dancing. Although the defendant expressed interest in also buying the property on which the business was located, the plaintiff was unwilling to sell. The defendant purchased the business on January 29, 2001, paying $3,175,000, of which $2,500,000 was for a liquor license. He entered into the lease of the premises on February 1, 2001. The lease term was ten years with two five-year options and a third ten-year option to extend.[2] The rent for the original term and the first two options was $84,000 per year.

The lease contains two provisions relied on by the plaintiff. Paragraph 10 provides, inter alia:

> "The LESSEE shall not make structural alterations or additions to the LEASED PREMISES without the express written consent of the LESSOR, which consent shall not be unreasonably withheld or delayed."

Paragraph 17 provides, in relevant part:

> "In the event that: (a) the LESSEE shall default in the payment of . . . rent . . . ; [or] (b) the LESSEE shall default in the observance or performance of any other of the LESSEE's covenants, agreements, or obligations hereunder and such default shall not be corrected within thirty (30) days after written notice thereof . . . then the LESSOR shall have the right thereafter, while such default continues, to re-enter and take complete possession of the LEASED PREMISES, to declare the term of this LEASE

---

[2] The first two options require the consent of the lessor. We need not consider whether the third also requires such consent.

ended, and remove the LESSEE's effects, without prejudice to any remedies which might be otherwise used for arrears of rent or other default."

After taking possession of the property, the defendant became aware that a storage shed attached to a corner of the building was in disrepair. The defendant decided to replace the shed, and in March, 2002, hired a contractor to demolish it and construct an 840 square foot addition in its place at a cost of approximately $132,000. The new storage area was not only significantly larger than the original, but was of sturdier construction.[3] Destruction of the old shed and construction of the new facility commenced in April without the defendant seeking the plaintiff's consent. As the judge found, "[o]n or about May 4, 2002 the plaintiff drove by the business, noticed some excavation in progress, drove to the rear of the building and took photos of the excavation and construction. He made numerous visits to the site and spoke with [the contractor] on several occasions and on one occasion stated to [him] that the work 'looked good.' " (Footnote omitted.)

On May 10, 2002, the plaintiff's counsel sent the defendant a default notice for failing to obtain written consent and demanded that the defendant cease construction and replace the old shed. The defendant replied on May 31, claiming that the improvement benefited the plaintiff and that it would be unreasonable for him to withhold consent. Both construction and correspondence continued.[4] On July 1, the plaintiff wrote to the defendant denying consent to perform the work. At trial, the plaintiffs gave three reasons for the denial: (1) he was concerned

---

[3]The original shed was twelve by twenty feet and approximately seven feet tall. The replacement was to be eighteen by thirty-nine feet and twenty feet high and included a basement.

[4]On June 13, 2002, the defendant's counsel requested written consent to make structural alterations. On June 18, the plaintiff requested building plans and supporting documents to assist the plaintiff in determining if he would consent to the construction, but also wrote that he considered the lease ended because the defendant had not provided documents previously requested relating to the construction. On June 20, the defendant submitted, among other things, financial statements, a copy of the application for a building permit, and plans for the proposed storage area. The plaintiff asked for more detailed documents. On June 26, 2002, the defendant sent the plaintiff a copy of the building permit.

about the defendant "punching a hole" in an existing load-bearing wall for a door; (2) the addition would result in an increase in property taxes; (3) the addition may result in zoning issues.[5] Construction of the storage area continued until August and ceased in midconstruction. A few weeks thereafter, the plaintiff brought this action.

2. *Decisions of the trial judge and the Appellate Division.* The trial judge found that the defendant's failure to obtain prior written consent to the structural alterations was a breach of the lease. He also found that the breach was not material and, without discussing paragraph 17 of the lease, that the plaintiff was not entitled to terminate the lease. The Appellate Division reversed, concluding that the defendant, as matter of law, had not met the requirements to avoid termination. It gave three reasons:

> "First, the lease contained a provision that put [the defendant] on notice that he faced termination of the lease if he breached the covenant dealing with alterations. Second, after he willfully breached the covenant in question, [the defendant] made no effort to comply with the lease by stopping the work and restoring the premises to their original condition. Finally, if the alterations were made, there was no guarantee that [the plaintiff] could have been placed in the same position he would have been in had the breach not occurred."

The plaintiff, relying on the decision of the Appellate Division, takes issue with the trial judge's implicit ruling that paragraph 17 is not dispositive and claims also that the breach was material as matter of law.

3. *General rules governing breaches of a lease and default clauses.* Before discussing the trial judge's findings in more detail, we turn to the general rules governing the right of a landlord to terminate a lease for breaches by a tenant.

a. *Material breaches.* In the absence of a clause similar to

At trial, the defendant was notified that the building permit had been issued in error as a special permit was required. The building inspector testified that he had not been made aware of the error until the day he testified.

[5] The building's zoning status was as a prior nonconforming use.

paragraph 17 (hereafter called a default clause), a landlord may only terminate a lease if the tenant commits a material breach, defined in our cases as a breach of an "essential and inducing feature of the contract[]." *Bucholz* v. *Green Bros. Co.*, 272 Mass. 49, 52 (1930). *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 470 (1991). *Lease-It, Inc.* v. *Massachusetts Port Authy.*, 33 Mass. App. Ct. 391, 396 (1992). See Restatement (Second) of Property (Landlord & Tenant) § 13.1 (1977). Thus, where the breach is material, it is unnecessary to discuss a default clause, even if contained in a lease or license; the landlord or licensor may terminate even without such a clause. See *Eno Sys., Inc.* v. *Eno*, 311 Mass. 334, 340 (1942) (license terminated for failure to exploit a patent, a matter going to the root of the parties' agreement). Whether a breach is material is normally a question of fact for the fact finder. *Boston Housing Authy.* v. *Hemingway*, 363 Mass. 184, 200 (1973). *Lease-It, Inc.* v. *Massachusetts Port Authy.*, 33 Mass. App. Ct. at 396.

b. *Insignificant breaches.* If the breach is insignificant or accidental, even if there is a default clause, our courts will not allow termination. See, e.g., *Mactier* v. *Osborn*, 146 Mass. 399, 402 (1888) (accidental breach of an obligation to insure); *Judkins* v. *Charette*, 255 Mass. 76, 82-83 (1926) (accidental failure to pay rent on time); *Kaplan* v. *Flynn*, 255 Mass. 127, 129-131 (1926) (failure to paint); *Howard D. Johnson Co.* v. *Madigan*, 361 Mass. 454, 457-459 (1972) (failure to submit gross sales figures, and when such figures were finally produced, failure to have them signed by a responsible financial officer of lessee). See also Restatement (Second) of Property (Landlord & Tenant) § 13.1 Reporter's note 9, at 507.[6]

c. *Breaches that are neither material nor insignificant.*

---

[6]Other jurisdictions also give no effect to a default clause where the breach is insignificant. Although the courts sometimes use stronger language, the facts of the cases indicate that the breach is minor. See, e.g., *Foundation Dev. Corp.* v. *Loehmann's, Inc.*, 163 Ariz. 438, 445-446 (1990) ("[N]early all courts hold that, regardless of the language of the lease . . . the breach must be 'material,' 'serious,' or 'substantial.' . . . [F]orfeiture for a trivial or immaterial breach of a commercial lease should not be enforced"); *Wolfram Partnership, Ltd.* v. *LaSalle Natl. Bank*, 328 Ill. App. 3d 207, 222-223 (2002) ("Regardless of the language used by the parties, a breach, to justify a premature termination or forfeiture of a lease agreement, must have been material or substantial"). See also 2 Friedman on Leases 16:2.3, at 16-31 (5th

Where the lease contains a default clause, but the breach, while not insignificant, is also not material (that is, it is not a breach of an "essential and inducing feature" of the agreement, see, e.g., *Bucholz* v. *Green Bros. Co.*, 272 Mass. at 52), the default clause will in most cases be controlling. See Restatement (Second) of Property (Landlord & Tenant) § 13.1 comment j (parties can agree that landlord's remedies for a breach by the tenant will be greater or less than what the remedies would be in the absence of such agreement); 13 Corbin, Contracts § 68.9, at 247-250 (rev. ed. 2003). Our cases seem in accord. In *Worcester Heritage Soc., Inc.* v. *Trussell*, 31 Mass. App. Ct. 343 (1991), there was no default clause. *Id.* at 347 n.2. Because the defendant's breach was not material, we did not allow reconveyance. *Id.* at 345. Significantly, however, we stated "that a different case would be presented if the contract contained a specific provision for reconveyance where the [plaintiff] is dissatisfied with the progress of the restoration." *Id.* at 347 n.2. Also of note is *Barry* v. *Frankini*, 287 Mass. 196, 199-200 (1934), where the court wrote, "Ordinarily equity will not set aside a contract at the suit of a party thereto on the sole ground of nonperformance by the other party of one of his agreements therein contained, in the absence of an agreement for termination upon breach by such nonperformance, where the breach is not of such a material and substantial nature as to excuse the party suing from proceeding with the contract, but will leave the party suing to his remedy by way of damages."

Even if a default clause would otherwise be effective, our courts "do not look with favor upon penalties and forfeitures." *Judkins* v. *Charette*, 255 Mass. at 83. See *Howard D. Johnson Co.* v. *Madigan*, 361 Mass. at 456. The decision in *Barry* v. *Frankini, supra,* like that in *Worcester Heritage Society, Inc.* v. *Trussell*, 31 Mass. App. Ct. at 347 n.2, involved an agreement without a default clause. Although in *Barry* the lessor breached the covenant to pay taxes, the taxes were paid by the bank and the lessee suffered no harm. The court noted, "Whether, if the

ed. 2004) ("The inclusion in a lease of a clause purporting to permit a landlord to terminate in case of some breach is no assurance that the clause will be enforced"), and cases cited; 2 Powell on Real Property § 17.02[1], at 17-15 to 17-17 (2002) (limitations on landlord's right to terminate).

.

indenture had contained such an express provision, in the circumstances shown equity would enforce, or even permit, a forfeiture of the lessor's rights under the lease need not be considered." *Barry* v. *Frankini, supra* at 200. Thus, even when there is a default clause, "[e]quitable considerations, . . . if present, may entitle the tenant to relief against the forfeiture of his lease for a mere failure to perform his promise." Restatement (Second) of Property (Landlord & Tenant) § 13.1 comment j.

4. *Determination of the judge that breach was not material.* We now return to the judge's subsidiary findings leading to his determination that the breach was not material. These findings "shall not be set aside unless clearly erroneous," Mass.R.Civ.P. 52(c), as appearing in 423 Mass. 1408 (1996), and bear on the plaintiff's contention, relying on the decision of the Appellate Division, that he is entitled to terminate the lease. Finding that the negotiations in reference to the alteration clause were minimal compared to those relating to the term of the lease and the amount of rent, the judge concluded that the alteration clause, although important to the parties, was not "an essential and inducing feature" of the lease agreement. See *Bucholz* v. *Green Bros. Co.*, 272 Mass. at 52; *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. at 470; *Lease-It, Inc.* v. *Massachusetts Port Authy.*, 33 Mass. App. Ct. at 396.

The judge also applied the more detailed factors for determining materiality contained in the Restatement (Second) of Contracts § 241 (1981).[7] These factors, too, he concluded, "to

---

[7]Section 241 provides: "In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

The Restatement (Second) of Contracts § 231 comment e states that the "applicability of the rules stated in this Chapter [which includes § 241] to

the extent they can be evaluated based on this record," weighed against the materiality of the breach. The plaintiff had received the benefit he expected from the lease: the defendant had timely made all the rent payments, he had maintained the property in good order, and the intended construction, as the judge put it, "may actually grant a benefit to the plaintiff." The only evidence of any injury to the plaintiff involved a possible increase in real estate tax obligations and zoning questions. The judge viewed these possibilities as speculative and pointed out that, in any event, the defendant offered to pay any tax increase occasioned by the storage area.[8]

The effect of forfeiture, the judge found, weighed most strongly in favor of the defendant, who had incurred great expense for a business which, because of the zoning laws, could only operate at the demised premises. The defendant would not only suffer forfeiture of the lease, but would be unable to conduct the business elsewhere, thereby rendering the business practically worthless. Moreover, the judge noted that nothing prevents the plaintiff from seeking an order requiring the defendant to remove the structure and build a storage area similar to the one that was demolished.

covenants in leases and other conveyances of land is not dealt with in this Restatement." Compare *Wesson* v. *Leone Enterprises, Inc.*, 437 Mass. 708, 715-722 (2002).

Nevertheless, the factors set forth in § 241 are viewed as significant in our landlord-tenant cases, especially where a party seeks relief from forfeiture. Our courts will consider the extent to which the injured party will be deprived of benefit, whether that party will suffer loss, and the extent to which the party failing to perform will suffer forfeiture. See *Lundin* v. *Schoeffel*, 167 Mass. 465, 468-470 (1897). They will look to whether "on the whole it is just and right" that relief from forfeiture of the lease should be granted. *Id.* at 469. They will also consider whether the injured party can be adequately compensated, or has changed its position. *Paeff* v. *Hawkins-Washington Realty Co.*, 320 Mass. 144, 148 (1946). Where the actions of the party failing to perform are wilful and show bad faith, relief against forfeiture will not be granted. See *Finkovitch* v. *Cline*, 236 Mass. 196, 200 (1920) (persistent and deliberate hanging of laundry on front of house was "calculated to exasperate and provoke the other party to the contract and to promote corrosive influences in the community"); *Cooley* v. *Bettigole*, 1 Mass. App. Ct. 515, 526 (1973) (commercial tenant's covering of hole in window in offensive manner was designed to irritate landlord).

[8]The judge considered any losses from adverse zoning decisions to be measurable and compensable in subsequent actions.

The judge also found that,

> "[a]lthough the defendant failed to obtain plaintiff's consent pre-construction, it did attempt to obtain it during construction, it provided the requested documentation to the plaintiff and it offered to pay any additional property taxes the addition would impose on the plaintiff. No evidence presented by plaintiff paints a picture of the defendant acting in a manner that can be described as bad faith."

The plaintiff does not contest the judge's findings of fact, and our review of the evidence indicates that on the whole the findings are well supported by the evidence.[9] What the plaintiff argues is that even if the default clause is not controlling, in any event, the breach here is material as matter of law. The record indicates otherwise. The judge's determination that the breach was not "material" included a number of factors, some of which involved equitable considerations, see note 7, *supra*, and the weighing of these factors is, as we indicated earlier, a matter for the fact finder. See *Boston Housing Authy.* v. *Hemingway*, 363 Mass. at 200; *Lease-It, Inc.* v. *Massachusetts Port Authy.*, 33 Mass. App. Ct. at 396. The judge's subsidiary findings that the benefit lost by the plaintiff was vastly disproportionate to the forfeiture which would be suffered by the defendant and that the defendant did not act in bad faith were not clearly erroneous. The Appellate Division may not make findings of fact and its statement that the defendant wilfully breached the alteration clause of the lease does not take into account the judge's finding of the lack of bad faith.

5. *Effect of the default clause and relief from forfeiture.* The defendant's breach, while not material, was also not trivial or insignificant; the judge found the alteration clause "important."

[9]One may question some of the judge's findings or conclusions. It may be that the judge's view as to possible benefit to the plaintiff should not override the plaintiff's own view. The judge's discussion as to taxes does not take into account the circumstance that the increase may continue beyond the lease term, and it is not evident how adverse zoning decisions may be measurable and hence compensable. Nevertheless, in the absence of some evidence rather than mere allegations that there may be adverse consequences, the judge's conclusions were not unwarranted.

Thus, in the absence of strong equitable considerations that would entitle the defendant to relief against forfeiture, the default clause of the lease would control; the plaintiff would have the right to terminate.

Because the judge erroneously failed to take the default clause into account in concluding that the plaintiff was not entitled to terminate the lease, he did not explicitly discuss whether the defendant is entitled to relief against forfeiture. In these circumstances, we would normally remand for additional findings. Indeed, the defendant in his brief suggests that in the event we hold the plaintiff entitled to terminate, we should remand for such findings. However, in this case, the plaintiff explicitly states as follows in his brief:

> "Fiumara requests that, if this Court reverses the trial court's judgment, the case be remanded for consideration on equitable forfeiture. Appellant's Br. at 43-45.

> "Such relief is unnecessary because the trial court has already considered this issue, and determined that there should be no forfeiture. See *Commonwealth* v. *Holmes*, 46 Mass. App. Ct. 550, 559 (1999) (concluding that 'in view of the record on appeal, we deem it unnecessary to remand for an explicit ruling for what was undoubtedly implicit in the judge's [decision]'). It is this very issue that is at the heart of this case and should be addressed by this Court as a matter of law.

> "In considering factor (c) of § 241 of the Restatement (Second) of Contracts, the trial court was obviously weighing the issue of forfeiture. [The trial judge found that] '[t]he third factor, the extent to which the defendant would suffer forfeiture, weighs clearly and strongly in favor of the defendant here.' App. 75-76. Fiumara himself notes that 'the fact findings of the trial judge about material breach imply a finding that equitable relief from forfeiture is appropriate . . . .' Appellant's Br. at 44. See *Commonwealth* v. *Miller*, 42 Mass. App. Ct. 703, 707 (1997) ('In the circumstances of this case, however, the record provides more than adequate basis for us to apply the [relevant] criteria, rendering remand unnecessary [as] wasteful of judicial resources')."

In view of the plaintiff's submission, we see no need to remand.[10,11]

6. *Summary and disposition.* Looking at the three reasons given by the Appellate Division for allowing termination of the lease, see part 2, *supra,* we consider that they give insufficient deference to the findings of the trial judge. We agree with the Appellate Division's determination that the default clause would, in the absence of other considerations, bear heavily in favor of termination. The other two reasons, however, do not give appropriate weight to the subsidiary findings of the trial judge, which were not clearly erroneous. Although the Appellate Division stated that the defendant "willfully breached" the alteration clause of the lease and made no effort to comply with the lease, the judge found otherwise. In addition, his findings in his discussion of materiality as to the disproportionate effects of termination on the defendant when compared to the minimal effect on the plaintiff are not clearly erroneous. Moreover, there is nothing to prevent the plaintiff from seeking damages or restoration of the original shed.

The order of the Appellate Division and the judgment that entered thereafter are reversed. If the plaintiff, within thirty days of issuance of the rescript, files a petition in the trial court for findings as to whether the defendant is entitled to equitable relief from forfeiture, the trial court shall determine that issue. It may in its discretion hear additional evidence or may decide the issue on the basis of the existing record. In the event the plaintiff files such a petition, the original judgment of the trial court shall be vacated and a new judgment shall enter following the determination of the issue of relief from forfeiture. If the plaintiff does not file such a petition within the thirty-day period, the original judgment of the trial court shall be affirmed.

*So ordered.*

---

[10]In the unlikely event the plaintiff considers that we have misstated his position, he may file a petition in accordance with the concluding paragraph of this opinion.

[11]In view of the posture of this case, we need not discuss the considerations or findings needed to overcome the effect of the default clause, nor need we reach the question whether the plaintiff was required to make an entry to terminate the lease prior to bringing this action.