Williams, P.J.
Following a jury-waived trial of this summary process action, the judge rejected the claim of the plaintiff, JonJame Realty Trust (“JonJame”), for possession of the leased office suite and awarded possession to the tenant, Ryan Orthodontics, P.C. (“Ryan”), finding that Ryan’s lease breaches were not material. JonJame appealed, asserting that the trial judge’s consideration of the breaches under a “materiality” standard was improper because the lease contained a default clause, triggered when breaches are “significant,” even though not material. JonJame further argues that the failure to order forfeiture as provided in the default *17 clause was erroneous.[1] Although we find that the trial judge incorrectly employed the “materiality” standard when weighing Ryan’s lease transgressions, we find that error harmless because the trial judge’s refusal to order forfeiture was not erroneous.
Ryan’s lease of a suite in a professional building in Plymouth was part of the purchase of an orthodontic practice. The lease was negotiated over several months by the parties and their counsel. During Ryan’s tenancy, JonJame determined that Ryan was breaching the lease in various ways, and so notified Ryan in writing, eventually seeking to evict Ryan and exercise the default clause. The claimed breaches concerned such issues as Ryan’s removing a signpost, changing interior locks, refusing to pay an alarm company’s service fee, delaying in providing to JonJame a liability-insurance certificate, removing thermostat covers, and changing decor without permission, including painting over a mural. The trial court analyzed the breaches in a twelve-page decision, and concluded that they amounted to “a series of irksome, but relatively minor contractual violations.”
‘To prevail on appeal on the basis of an assault on a judge’s factual findings is no easy matter, for we accept the judge’s findings of fact as true unless they are ‘clearly erroneous.’” Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010). The trial judge “had the opportunity to view the witnesses’ demeanor, as well as to listen to their testimony. In this fact-intensive case, she was in the best position to assess the credibility of the witnesses and to determine the facts.” Id. at 636-637. Reviewing a judge’s factual conclusions, we set them aside only if we are left with the firm and definite conviction that a mistake has been committed. Id. at 637, quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997) (“[Wje'do not ‘review questions of fact found by the judge, where such findings are supported’ on any reasonable view of the evidence, including all rational inferences of which it was susceptible” [emphasis added] [citation omitted]).
JonJame argues that several of the trial judge’s findings of fact were clearly erroneous and unsupported by the record. Noting the trial judge’s “background recitation” of the history between the parties before her consideration of individual claimed lease violations, JonJame submits that her characterization of that relationship as one of personal animosity was inaccurate, and distracted her from properly analyzing the dispute as a legitimate commercial one. Our point above about the trial judge’s assessment of the credibility of the witnesses emerges into sharp relief here. We need not recapitulate the record in order to observe that the trial judge could well have *18 inferred that the parties’ relationship increasingly soured during the lease term. JonJame, acknowledging in its brief that the trial judge “may have sensed a measure of dislike between the parties based on the tone of the witnesses’ testimony and [their] completely divergent positions,” posits that such “resentment” is natural in a summary process action. Whether that is true or not, we are not convinced that the trial judge was unable to discern the difference between the display of any such “natural” emotions at trial and a rancor that she found had tainted the events themselves.
More cogently, JonJame submits that the trial judge improperly excused Ryan’s claimed breaches by measuring them against a “materiality” standard, wrongly applied to this painstakingly negotiated lease. See, e.g., DiPietro v. Sipex Corp., 69 Mass. App. Ct. 29, 38 (2007) and cases cited (“material” breach of contract occurs when breach is of “essential and inducing feature of the contraed’); Farris v. Field, 2009 Mass. App. Div. 273, 276. Parties to a lease are free to agree that a landlord’s remedies for a tenant’s breach may be different in kind — either greater or lesser — than remedies otherwise available. DiBella v. Fiumara, 63 Mass. App. Ct. 640, 645 (2005). See also Zielinski v. Connecticut Valley Sanitary Waste Disposal, Inc., 70 Mass. App. Ct. 326, 334 (2007) (lease with no default clause may be terminated for material breach). These parties agreed to a default clause.[2] Generally, the default clause will not control, and therefore termination will not be ordered, if the breach is merely insignificant or accidental. DiBella, supra at 644. But a breach that is neither “insignificant,” nor, at the other end of the spectrum, “material,” will usually trigger the default clause. Id. at 645. Stated another way, when a lease contains a default *19 clause, the fact finder must determine whether a claimed breach is “insignificant” or “accidental,” which will not trigger the clause, or "significant,” which will. The question of “materiality,” however key when no default clause exists, is irrelevant. JonJame urges that the trial court aimed too high — Ryan’s breaches, while perhaps not material, were “significant” and so sufficed to activate the default clause, which then would have, and should have, triggered forfeiture.
Before discussing the trial judge’s findings here, we point out that “[ejven if a default clause would otherwise be effective, our courts ‘do not look with favor upon penalties and forfeitures.’” Id., quoting Judkins v. Charette, 255 Mass. 76, 83 (1926). “Thus, even when there is a default clause, ‘[ejquitable considerations ... if present, may entitle the tenant to relief against the forfeiture of [its] lease for a mere failure to perform [its] promise.’” Id. at 646, quoting RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT) §13.1 comment j (1977). Among such considerations are “the extent to which the injured party will be deprived of benefit, whether that party will suffer loss, and the extent to which the party failing to perform will suffer forfeiture.” Id. at 646 n.7. A court will “look to whether ‘on the whole it is just and right? that relief from forfeiture of the lease should be granted,” id., quoting Lundin v. Schoeffer, 167 Mass. 465, 469 (1897), and “will also consider whether the injured party can be adequately compensated, or has changed its position.” Id. Indeed, forfeiture seems appropriate when the defaulting party acts wilfully and in bad faith, behaving in a manner “calculated to exasperate and provoke,” id., quoting Finkovitch v. Cline, 236 Mass. 196, 200 (1920), or “irritate” the other party. Id.
It is true that the trial judge, addressing the claimed breaches, concluded that each was not material. Given the default clause here, that standard was irrelevant, and so erroneous. But she also concluded that, together, the breaches constituted “a series of irksome, but relatively minor contractual violations.” Although “irksome” could connote “irritating,” the trial judge explicitly found that only Ryan’s destruction of thermostat covers was done in bad faith. As to the remaining violations, the trial court either did not label them as having been done in either good or bad faith (the signpost removal, the changed locks, the liability-coverage documentation), or specifically found that Ryan had acted in good faith (failure to pay for alarm-company response and the decor changes). She found that Ryan had paid its rent and made reasonable use of the premises. We cannot say that any of these findings were clearly erroneous. Millennium Equity Holdings, LLC, supra at 636-637. And because the trial judge did not find that Ryan had acted wilfully and in bad faith, she properly weighed whether Ryan was entitled to relief from the disfavored remedy of forfeiture, DiBella, supra at 646 n.7, and found it was. She observed that such breaches as the thermostat-cover damage and the decorative alterations were losses for which JonJame could seek compensation, id., and, relying on DiBella, found that applying forfeiture in the circumstances presented was not “just and right.” Id. That conclusion, in essence that the benefit lost by JonJame “was vastly disproportionate to the forfeiture which would be suffered by [Ryan] and that [Ryan] did not act in bad faith,” id. at 648, was not erroneous. The trial court’s use of the materiality standard was of little import since even had she used the “significant” standard, she could properly have declined to impose forfeiture upon Ryan.
Judgment affirmed. Appeal dismissed.
So ordered.

 Arguing that JonJame violated Dist./Mun. Cts. R. A. D. A., Rule 3(c) by failing to include in its notice of appeal any statement of specific issues of law or reference to rulings or actions of the trial court, Ryan moved to dismiss the appeal. Ryan, however, did not so move in the trial court, but filed its motion only after JonJame had filed its appellate brief and Ryan was facing its briefing deadline. Even assuming that Ryan is correct that an appellant’s failure to specify any appellate issues is a serious procedural misstep warranting dismissal of an appeal, Ryan simply waited too long here to raise that issue. See Randolph v. Madison Sq. Realty Mgt., Inc., 2008 Mass. App. Div. 186, 187. To the extent Ryan’s motion to dismiss retains any vitality at this point, we deny it and decide this appeal on its merits.

 Paragraph 11 of the lease provided:
In the case of failure on [Ryan’s] part to... keep or perform any covenant or agreement contained in this Lease on [Ryan’s] part to be performed (other than the payment of rent), continuing for ten (10) days after written notice thereof, and in any of the events [JonJame] may, immediately or at any time thereafter, (a) institute legal proceedings to recover possession of the Demised Premises for default; (b) terminate the within Lease agreement; (c) without the necessity of making entry, expel [Ryan] and remove its effects without being guilty of trespass; and/or (d) thereafter resume possession of the Demised Premises, all as permitted by law and without prejudice to any other remedies [JonJame] may have. Said remedies shall be cumulative. In the case of any termination hereunder or [Ryan’s] default, [Ryan] will be and remain liable to [JonJame], and will indemnify [JonJame] against, all loss of rent under its Lease by reason of such termination or in account of the Demised Premises remaining vacant or being rented for less rent during such remaining term.
In computing [JonJame’s] damages there shall be added to such expenses and cost as [JonJame] may incur [as] the result of [Ryan’s] default. Said expenses shall include, without limitation, all reasonable attorney’s fees.... In the event of [Ryan’s] default hereunder, all rental payments then due to be due during the term of this Lease shall immediately become due and payable to [JonJame].