NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1306

GAGNE REALTY CORP.

vs.

BBG SOUZA ENTERPRISES, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this appeal following a Superior Court bench trial in a commercial summary process action, the defendant, BBG Souza Enterprises, Inc. (tenant), challenges a judgment entered in favor of the plaintiff, Gagne Realty Corp. (landlord), awarding the landlord possession and attorney's fees and costs.  We affirm.

Background.  We recite the facts found by the trial judge. In July 2015, the parties agreed to a five-year lease for a bay or unit of a strip mall located at 23 Sack Boulevard, Leominster (premises).  The tenant moved into the premises and operated a restaurant known as Comeketo Brazilian Steakhouse (Comeketo). Sometime in 2015 or 2016, the parties verbally agreed that the

tenant could temporarily locate a storage trailer on the landlord's nearby property on Mill Street at no cost and with the further understanding that the tenant would remove the trailer when instructed by the landlord.  Thereafter, the tenant used the storage trailer to store restaurant equipment and furniture.

In July 2020, the parties executed a new five-year lease for the premises and added some new terms at the insistence of the landlord (2020 lease).  These terms (1) required the tenant to comply with "any other agreement" with the landlord "relating to the premises," (2) prohibited the tenant from storing restaurant equipment and materials outside the premises, and (3) required the tenant to hire a professional company to regularly clean grease traps.

Months later, in November 2020, the landlord leased the nearby Mill Street property to Enterprise Rent-A-Car.  That same month, the landlord instructed the tenant to remove the storage trailer from the Mill Street property.  Throughout 2021, the landlord made repeated requests to the tenant to remove the storage trailer, but the tenant did not comply.

On January 14, 2022, the landlord served the tenant a written notice identifying four alleged defaults under the 2020 lease:  (1) failing to move the storage trailer, (2) storing two portable heaters outside the premises in a common area, (3)

2

storing a buffet station and other equipment and debris outside the premises in a common area, and (4) failing to provide proof of grease trap cleaning by a professional company. After the tenant failed to cure the defaults, on February 16, 2022, the landlord served the tenant a written "Notice to Quit & Notice of Termination of Commercial Lease." As a good faith accommodation to allow the tenant time to move the restaurant during the next six months, the landlord agreed to a tenancy at will.

On August 30, 2022, through a written "Notice of Termination of Estate at Will and Notice to Quit," the landlord terminated the tenant's tenancy at will. The tenant failed to quit the premises, and on October 13, 2022, the landlord filed a summary process complaint for "failure to vacate premises after termination of tenancy-at-will and expiration of notice period." In its answer, the tenant claimed that it was "lawfully in possession of the leased premises pursuant to a written lease" in effect until June 30, 2025.

Following a trial, the judge concluded that the tenant defaulted and materially breached the 2020 lease by failing to move the storage trailer and storing the heaters, buffet station, and other equipment outside the premises. The judge rejected the claim related to the grease traps. The tenant now appeals.

Discussion.  A landlord may terminate a commercial lease when a tenant commits a material breach or otherwise violates the terms of a default clause.  See DiBella v. Fiumara, 63 Mass. App. Ct. 640, 644 (2005).  A breach is material when it consists of an "essential and inducing feature of the contract[]."  Id., quoting Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930).  See G4S Tech., LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 734 (2018) (essential and inducing features of contract are provisions so serious that "a failure to uphold the provision would justify the other party walking away from the contract").  "[E]ven when there is a default clause, '[e]quitable considerations, . . . if present, may entitle the tenant to relief against the forfeiture of his lease for a mere failure to perform his promise.'"  DiBella, supra at 646, quoting Restatement (Second) of Property (Landlord & Tenant) § 13.1 comment j (1977).  "If the breach is insignificant or accidental, even if there is a default clause, our courts will not allow termination."  DiBella, supra at 644.

The judge here concluded that the tenant's conduct constituted defaults and material breaches.  "When reviewing the trial judge's decision, we accept [her] findings of fact as true unless they are clearly erroneous, and we give due regard to the judge's assessment of the witnesses' credibility."  Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005), citing Mass.

4

R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996). "We review the judge's conclusions of law de novo." Kitras v. Aquinnah, 474 Mass. 132, 139, cert. denied, 580 U.S. 1000 (2016). Based on our review of the record under these standards, we discern no error.

1. Material breaches. The record supports the judge's ultimate conclusion that the tenant breached the 2020 lease by storing equipment outside Comeketo. Paragraph ten of the 2020 lease expressly prohibited the tenant from storing "any equipment or materials outside the Premises" without prior written approval of the landlord. Undisputed evidence at trial supported the judge's finding that the tenant stored a buffet station, portable heaters, and other equipment outside Comeketo without the landlord's approval. This outside storage constituted a material breach because the landlord would not have leased the premises under the 2020 lease without this prohibition; all the tenants, who were operating businesses in close proximity to each other and sharing common areas, had to comply with the same prohibition on outside storage. See DiBella, 63 Mass. App. Ct. at 644.

The record also supports the judge's conclusion that the tenant breached a material term of the 2020 lease by failing to remove the storage trailer from the Mill Street property. Before signing the 2020 lease, the parties verbally agreed that

5

the tenant could temporarily use the storage trailer and would remove the trailer when instructed by the landlord. Based on this agreement, the tenant used the storage trailer to store restaurant equipment while setting up Comeketo on the premises, renovating Comeketo, and operating a catering business out of Comeketo. Paragraph twenty-two of the 2020 lease required the tenant to comply with "any other agreement between Lessor and Lessee relating to the Premises." Given the link between the operations of Comeketo and the storage trailer, the judge could conclude that the tenant's failure to move the storage trailer constituted a material breach of the 2020 lease.

2. Defaults. Apart from any question about the materiality of the breaches, the record also permitted the judge to conclude that the tenant's conduct constituted defaults under the 2020 lease. Paragraph twenty-two (referenced above) also served as a default term that applied to the circumstances presented. A default occurs "[i]f Lessee fails to perform any of the terms or provisions of this Lease or under any other agreement between Lessor and Lessee relating to the Premises." The judge could conclude that the tenant's storage outside Comeketo and the tenant's failure to move the storage trailer were neither insignificant nor accidental and constituted defaults under this paragraph of the 2020 lease. DiBella, 63 Mass. App. Ct. at 644. While equitable considerations may

6

entitle a tenant to relief from the effects of such defaults, nothing in the record suggests that the judge erred. The landlord's conduct here did not bespeak an effort to invoke obscure terms of the lease as a kind of "tripwire" to terminate the agreement on a trifling matter when it became advantageous to do so. To the contrary, the record shows that the landlord sought to preserve the relationship with the tenant and worked with the tenant for a prolonged period of time to facilitate remedial action.

3. Waiver. The tenant contends that even if storing materials outside the premises can be considered material breaches, the judge should have found that the landlord, by acquiescing to such storage for an extended period of time and continuing to accept rental payments, waived any rights to forfeiture. In the commercial lease context, waiver is a question of fact in light of all of the circumstances. See M.J.G. Props., Inc. v. Hurley, 27 Mass. App. Ct. 250, 252 (1989) (Hurley).

The tenant relies heavily on Hurley to support its argument that the landlord waived its right to terminate the 2020 lease. The tenant's reliance on Hurley is misplaced both as a matter of law and as a matter of fact. Unlike Hurley, 27 Mass. App. Ct. at 251-253, where the lessor, who had knowledge of the breaches at issue, never mentioned them to the lessee and ignored them

7

until the notice of termination, the landlord here did not ignore the tenant's numerous breaches.  Starting at least as early as March 27, 2021, the landlord requested that the tenant remove the items stored outside Comeketo and was assured by the tenant that the issue "will be taken care of."  The landlord continued these written and verbal efforts until January of 2022, when it saw no other option but to place the tenant on notice that multiple "events of default" had occurred.  Rather than acting in a manner that constitutes a waiver of legal rights, the landlord here acted with patience and courtesy in a reasonable effort to accommodate the business needs of the tenant.  Therefore, we discern no error by the judge.

4.  <u>Subsequent actions</u>.  The tenant further argues that the judge erred by improperly considering the tenant's actions that followed termination of the 2020 lease and the tenancy at will. We disagree.  Based on the evidence presented and the tenant's supplication for equitable relief, the judge found that the tenant engaged in numerous unsafe and unsanitary acts and omissions even after the termination of the 2020 lease and the tenancy at will, continuing well into 2023.  The tenant, however, has not shown that the judge relied on these subsequent actions as grounds for termination.  Rather, as set forth above, the material breaches expressly enumerated in the judge's findings occurred prior to the summary process action.

8

Furthermore, the landlord fully identified the breaches at issue in the notice of default and the notice to quit and notice of termination.  See Strycharski v. Spillane, 320 Mass. 382, 384-385 (1946) (grounds for termination must be identified in notice to quit).  The tenant has not shown that the judge erred.

Judgment affirmed.

By the Court (Blake, Walsh & Hodgens, JJ.[1]),

Paul Little

Clerk

Entered: October 29, 2024.

---

[1] The panelists are listed in order of seniority.