Hand, PJ.
This case arises from a commercial landlord-tenant dispute. Plaintiff-appellee D&D Realty Trust (“D&D”) and defendant-appellant Donald Borgeson (“Borgeson”) were, at the times relevant to this appeal, the parties to a written lease for property at 76 Main Street, North Easton, Massachusetts, on which Borgeson ran a gas station and convenience store (“property”) ,[1] We understand from the parties’ argument that the lease at issue in this case was not the first lease between the parties concerning this property. With limited exceptions noted below, the terms of any prior lease, and the history of its termination, are not part of the record in this case. The lease on which this appeal turns commenced on September 1, 2010, and included several provisions at issue in this appeal. First, paragraph 9 of the lease (“insurance provision”) required, among other things, that Borgeson “procure and keep in force comprehensive general liability insurance” indemnifying him for third-party losses caused by personal injury and property damage and that he also obtain and maintain “insurance coverage, in a form and amount acceptable to [D&D], for any environmental hazard, accident, or release of any oil, gasoline or other environmental hazard.” The terms of the lease required Borgeson to name both himself and the lessor, D&D, as insured parties to the required insurance coverage, and explicitly provided that “[a] 11 insurance required hereunder shall be written by insurance carriers qualified to do business and in good standing in Massachusetts and approved by [D&D], which approval shall not be unreasonably withheld.”[2] Additionally, Borgeson was required to deliver to D&D copies of the required insurance policies as of the date of the lease and fifteen days before the expiration of each policy.
The lease called for D&D to provide written notice of default to Borgeson, and allowed thirty days to cure any default identified in such a notice.
*116 D&D’s evidence that it provided written notice of default to Borgeson by letter of March 20,2013 was undisputed. The defaults alleged included failure to provide D&D with copies of the required insurance policies “for the past 3 years.”[3] There was no evidence that Borgeson acted to cure any alleged default until shortly before trial.'[4] On May 1,2013, D&D’s counsel advised Borgeson that, based on his failure to cure the defaults included in the prior notice, the tenancy under the lease was terminated. Thereafter, D&D filed a summary process complaint against Borgeson, in which it sought possession of the property and damages for the out-of-pocket costs it alleged that it incurred in obtaining environmental hazard insurance that Borgeson should have obtained, per the lease, but did not.
The case was tried, jury waived, on July 25,2013. The judge ruled for D&D, finding that Borgeson had wilfully and deliberately breached the lease by failing to maintain continuously the required insurance coverage, and in failing to provide proof of insurance to D&D as required by the lease terms. Finding Borgeson’s breach to be “significant,” the court ordered that D&D have possession of the property and awarded monetary damages to compensate D&D for its payment of certain insurance costs that it incurred during the term of the lease.
At trial, the parties disputed the existence of the coverage required under the insurance provision of the lease, whether Borgeson had provided D&D with the opportunity to approve the coverage he purportedly obtained, and whether Borgeson provided notice of the coverage to D&D as the lease required him to do. With respect to the insurance requirements, the evidence, even in the best light for Borgeson, showed that Borgeson failed to follow the letter of the lease with regard to any coverage he actually obtained.
Insurance - Coverage gaps. First, the evidence at trial provided a basis on which the court could have found gaps in tihe required insurance coverage. Turning to the required liability coverage, we note that while there was evidence that, at some of the times relevant to this dispute, the property was covered by a general liability policy, the evidence of general liability coverage for the period from December 1, 2012 through April 4, 2013 is not clear. Further, there is no evidence at all of such coverage from April 4,2013 until May 3,2013. While Borgeson introduced declarations pages for general liability coverage from December 1,2010 through December 1,2012,[5] and for the period from May 3, 2013 through May 3,2014, the evidence at *117 trial did not include any declarations page or policy showing coverage for the interim period between those dates.[6]
Additionally, there was sufficient ambiguity in the evidence of environmental hazard coverage through qualified insurance carriers that the court was well within its discretion in determining that Borgeson failed to maintain complying coverage for these losses. This is particularly apparent as to the period from October 7, 2012 through October 7, 2013, when the policy declarations page admitted as evidence of the environmental hazard insurance Borgeson obtained for the property included the explicit warning that “[t]his policy is insured by a company which is not admitted to transact insurance in the commonwealth, is not supervised by the commissioner of insurance and, in the event of an insolvency of such company, a loss shall not be paid by the Massachusetts Insurers Insolvency Fund under chapter 175D.”
Insurance - Notice. Second, there was ample evidence from which the court could have found that Borgeson failed to provide D&D the opportunity, provided for in the lease, to approve any coverage that Borgeson obtained in keeping with the insurance provision, and failed to provide D&D with copies of those policies that Borgeson did obtain. Borgeson initially testified that he told his insurance agent to forward copies of the policies to D&D, and that “liability policies” were forwarded from one of Borgeson’s insurance agents to D&D’s insurance agent. Borgeson himself did not provide any insurance policies to D&D. On cross-examination, Borgeson testified that he “[did not] know for sure” whether he directed his agent to provide D&D with copies of the policy. At trial, D&D’s trustee, Dorothy Sundell (“Sundell”), testified that D&D was never given the opportunity to approve any insurance coverage obtained for the properly after the 2010 lease was signed, and that neither Borgeson nor anyone on his behalf had provided D&D with copies of the insurance policies, as required by the lease, until a week before trial. While Borgeson introduced into evidence a November 5, 2010 letter from D&D’s counsel to Borgeson’s lawyer, confirming “that we have received the insurance policies and the insurance broker has confirmed that they are acceptable,” Borgeson did not establish to which insurance the letter related; certainly, it could not have applied to any policies obtained after the letter’s 2010 date.[7] The author of the letter did not testify, and Sundell denied having received copies of any policy at that time. likewise, although Borgeson had Sundell read from an October *118 7, 2010 letter[8] authored by someone else, indicating that copies of a “storage tank pollution policy” had been forwarded to D&D’s insurance agent, Sundell disclaimed having ever received such a document. Sundell testified that when D&D was unable to confirm that Borgeson had purchased the environmental hazard coverage specified in the lease, D&D bought its own policy, at a cost of $2,097.00, rather than leaving the property without that insurance. While Borgeson attempted to impeach this evidence with letters he represented were to and from the parties’ counsel, some confirming and approving unspecified coverage,[9] Sundell maintained that D&D never received copies of the coverage. For his part, Borgeson argued that D&D never asked him for copies of the policy — a position weakened by his concession that the lease did not require D&D to make such a demand.
Insurance - Parties to lease not named as insureds. Third, although the insurance provision of the lease required “the lessee” — Borgeson — to obtain and maintain insurance for the property, and to name D&D as an additional insured on the required coverage, the evidence amply supported a finding that he did not do so. Specifically, the evidence of liability coverage shows that D&D was not named as an insured on any general liability policy in effect between the date of the lease and May 3, 2013. None of the environmental hazard insurance covered D&D, and what environmental hazard coverage there was for the period after October 7,2012 was issued only in the name of “Borgeson Automotive, Inc.,” and not to Borgeson, individually.
Analysis. Borgeson’s first argument is that the trial court’s findings were against the weight of the evidence. In order to prevail on this theory, Borgeson bears the burden of demonstrating that the findings were “so greatly against the weight of the evidence as to induce in [the reviewing courts] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.” Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992), quoting Scanned v. Boston Elevated Ry., 208 Mass. 513, 514 (1911). Assessing not only the presence or absence of evidence of Borgeson’s compliance with the insurance provision of the lease, but also “the probative force of the evidence,” Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 520 (1989), quoting Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56, 60 (1948); see Phachansiri v. City of Lowell, 35 Mass. App. Ct. 576, 579-580 (1993), we conclude that Borgeson has failed to carry this burden.
We review the trial judge’s factual findings for clear error. Mass. R. Civ. P., Rule 52(c). A finding is “clearly erroneous” when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Guardianship of Clyde, 44 Mass. App. Ct. 767, 774 (1998). “If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge’s choice is not clearly erroneous.” W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993).
*119 As we outline above, the evidence at trial strongly supported the court’s finding that Borgeson failed to maintain the required liability or environmental hazard coverage for the period from the inception of the lease to the time suit was filed.[10] likewise, Borgeson’s evidence of having provided D&D with the opportunity to review and approve any of the required coverage that he did obtain, and of having provided copies of the policies, was thin, at best, and was directly contradicted by Sundell’s testimony that Borgeson did not provide D&D with those opportunities to review, or with copies of the policies. Lastly, it is uncontested that the coverage he obtained consistently failed to name D&D as an additional insured, as agreed in the lease terms. The judge’s findings that Borgeson defaulted on the lease terms were entirely consistent with the evidence presented at the trial.
Where, as here, a commercial lease includes a default clause, it is not necessary that a party’s breach of the terms of the lease be “material”; instead, a “not insignificant” breach will usually trigger the consequences of the default clause. See DiBella v. Fiumara, 63 Mass. App. Ct. 640, 645 (2005), citing Restatement (Second) of Property (Landlord & Tenant) §13.1 comment j (parties can agree that landlord’s remedies for breach by tenant will be greater or less than what remedies would be in absence of such agreement), and 13 Corbin, Contracts §68.9, at 247-250 (rev. ed. 2003); JonJame Realty Trust v. Ryan, 2011 Mass. App. Div. 16, 18-19 (2011) (“[Wjhen a lease contains a default clause, the factfinder must determine whether a claimed breach is ‘insignificant’ or ‘accidental,’ which will not trigger the clause, or ‘significant,’ which will. The question of ‘materiality,’ however key when no default clause exists, is irrelevant.”). Here, the breaches on which the trial judge relied in his rulings — Borgeson’s failure to comply with the insurance provisions — met not only that standard, but also the stricter standard of material and significant breach that the trial judge applied. Borgeson’s at least intermittent failure to insure the property against claims for personal injury, property damage, or hazardous waste contamination, and to name D&D as an insured, was the equivalent of playing financial Russian roulette. The fact that no potentially covered loss occurred during that period does not minimize the seriousness of Borgeson’s failure to insure against it, as the lease explicitly required. Given, at a minimum, Borgeson’s failure to maintain the insurance coverage required under the lease, his consistent failure to name D&D as an additional insured, his attempt to satisfy the requirement that he insure against environmental hazards through an insurer not qualified to write insurance in Massachusetts, and his failure to provide D&D with copies of the policies that would have permitted D&D to object to any deficient coverage before Borgeson *120 obtained it, we see no clear error in the trial judge’s determination that Borgeson’s breaches of the insurance provision were “wilful and deliberate.”
Next, Borgeson argues that the trial judge erred in admitting into evidence copies of two checks that Sundell identified as her payments for environmental hazard coverage at the property for which Borgeson should have been responsible. On appeal, Borgeson argues that the court should have declined to accept these checks into evidence based on application of the best evidence rule. Borgeson did not, however, preserve this objection at trial: Borgeson’s objection at that point was on the grounds that the checks themselves did not clearly identify the policy number to which they related or the address of the property for which they were used to purchase insurance coverage. An objection not raised at trial may not be argued for the first time on appeal. See, e.g., Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) (issue not raised or argued below may not be argued for first time on appeal).
Borgeson next appeals the court’s unsolicited award of attorney’s fees. In its written findings, the trial court awarded damages of $2,097.00, “plus filing costs and attorney fees.” According to the docket, judgment entered on August 29, 2013; D&D’s counsel filed an affidavit of attorney’s fees on September 9, 2013; the defendant opposed the motion; and, on June 6, 2014, the trial court ordered attorney’s fees for D&D in the amount of $14,437.50.[11] While, as Borgeson points out, at trial D&D did not specifically argue the issue of attorney’s fees, the parties’ lease, which was a trial exhibit, clearly provided for D&D’s recovery of “any expenditures ... including, but not limited to, reasonable attorney’s fees... in instituting, prosecuting or defending any action or proceeding” occasioned by Borgeson’s default on a lease provision. D&D’s failure to argue the issue of attorney’s fees was not fatal, as it was within the courts discretion to reopen the evidence after judgment, as it did, to allow D&D to submit its affidavit of attorney’s fees and to allow Borgeson to oppose that evidence. “The decision to permit a plaintiff to reopen his case to offer additional evidence is one well within the sound discretion of the trial judge. Jones v. Vappi Co. & Inc., 28 Mass. App. Ct. 77, 83 (1989); Cambridge Hous. Auth. v. Wedge, 2000 Mass. App. Div. 235, 236.” Dew v. Laufauci, 2001 Mass. App. Div. 95, 96. See Weber v. Coast to Coast Med., Inc., 83 Mass. App. Ct. 478, 481 (2013) (same), citing/owes, supra. The court did not err in awarding attorney’s fees in this case.
Lastly, we address Borgeson’s argument that the court erred by failing to consolidate this action with a separate action in which Borgeson apparently brought suit for what would, in the context of a residential eviction, be counterclaims. Borgeson overlooks the fact that no motion to consolidate was ever made in this case. To the extent that such a motion was raised in another action, any remedy Borgeson has would be in that case.
For the foregoing reasons, we find no error in the trial court’s rulings in this case. The judgment is affirmed.

 Borgeson operated the business as “Borgeson’s Automotive Inc.” Borgeson signed the lease in his individual capacity.

 We reject Borgeson’s argument that the language of the lease (1) identifying the required insurance coverage to be written by Massachusetts-qualified insurance carriers, (2) stating that the policies be approved by the lessor, and (3) specifying that the policies name D&D as additional insureds does not apply to the environmental hazard coverage called for in the last paragraph of the insurance provision.

 D&D also alleged that Borgeson failed to maintain the fire protection devices in good order and that he did not maintain certain metal curbing around the gas pump islands. As these claimed defaults were not identified by the trial judge as bases for his ruling, we do not discuss them here.

 At trial, Borgeson introduced a letter from his attorney to D&D’s counsel in response to D&D’s notice of default. The letter, however, is not part of the record here.

 It appears from the trial transcript that the policies themselves may also have been introduced into evidence, although they are not part of our record. In any event, there was no evidence that the policies were provided to D&D or to its counsel until immediately before trial in 2013.

 The evidence did include a payment coupon for a Traveler’s Insurance policy for the period from April 4, 2012 through April 4, 2013; the coupon, however, did not specify the coverage to which it applied. Further, the coupon identified the insured as “Borgesons Automotive Inc.,” 20 Central Street, South Easton, Massachusetts. That address is not the address of the property at issue here; in fact, Borgeson did not testify that the coupon related to any insurance for the property. There was no evidence of the type of insurance to which the payment coupon related; the policy number on the coupon does not correspond to any other exhibits introduced at trial. There was no evidence that the premium set out on the coupon was paid. Borgeson testified that he was unable to obtain copies of this policy from his insurance agent.

 Further, as the letter references “D&D Realty Trust v. Borgeson,” but predates the eviction action here, we conclude that the letter related to concerns of some other action between the parties, and cannot say that it had anything to do with the dispute before us here.

 The letter is not a part of our record.

 Over D&D’s objection, Borgeson had Sundell read from letters between counsel for D&D and Borgeson, indicating that “since Borgeson’s Automotive purchased pollution coverage on October 7, 2010,” Borgeson or his attorney had forwarded copies of “the storage tank pollution policy” to D&D’s insurance agent The letter was not admitted into evidence.

 At trial, Borgeson testified that while he purchased environmental hazard insurance for the policy period from October 7, 2012 through October 7, 2013, knowing that the insurer did not issue policies in Massachusetts, he did so because no such coverage was available through a Massachusetts insurer. The court was free to assess the credibility of Borgeson’s testimony, including not only the court’s assessment of Borgeson’s truthfulness, but also the court’s determination of whether Borgeson had any reliable way of knowing whether such coverage was, in fact, available. Based on Borgeson’s consistent testimony that he relied on various insurance agents to obtain the policies that he requested, and to provide them to D&D or its insurance agent, the court would have been on firm ground in rejecting as unpersuasive Borgeson’s testimony that he, personally, knew that the required insurance was not available from a Massachusetts insurer.

 On that same date, June 6, 2014, the court ordered the appeal bond in the case to be increased by the amount of the fee award from the original damages award of $2,097.00. Borgeson appealed the increased bond to the Appellate Division, which affirmed the initial bond amount of $2,097.00 and reduced the subsequent bond increase from $14,437.50 to $7,225.00, for a total bond of $9,322.00. That amount was presumably posted by Borgeson in the trial court, as the appeal of the judgment was ultimately transmitted to this Division in December, 2014.